2020 IL App (3d) 190504

Opinion filed August 21, 2020

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2020

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 21st Judicial Circuit, Kankakee County, Illinois, |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | Appeal No. 3-19-0504 Circuit No. 19-CF-61 |
| KENDALL D. HARRIS, | ) ) ) | Honorable Clark E. Erickson, |
| Defendant-Appellee. | ) | Judge, Presiding. |

PRESIDING JUSTICE LYTTON delivered the judgment of the court, with opinion.
Justice McDade concurred in the judgment and opinion.
Justice Holdridge dissented, with opinion.

**OPINION**

¶ 1      Defendant Kendall D. Harris was charged with two counts of unlawful delivery of a controlled substance (720 ILCS 570/401(d)(i), (iii) (West 2018)). He filed a motion to suppress evidence, arguing that the court should exclude the testimony of a confidential informant and the audio and video recordings captured by the informant with a hidden camera. The trial court granted the motion. The State appeals the trial court's suppression of the video recording and testimony of the informant. We affirm.

¶ 2                                    I. BACKGROUND

¶ 3        Defendant was charged with two counts of unlawful delivery of a controlled substance (*id.*) for delivering substances containing heroin and fentanyl to a confidential informant. During the alleged drug transaction, the confidential informant was wearing a buttonhole camera that recorded both audio and video.

¶ 4        Prior to the alleged transaction, an assistant state's attorney approved a law enforcement officer's request for the informant to use an eavesdropping device pursuant to an exemption to the eavesdropping statute. The exemption allows a state's attorney to grant approval for an eavesdropping device "after determining that reasonable cause exists to believe that inculpatory conversations concerning a qualified offense will occur with a specified individual or individuals within a designated period of time." 720 ILCS 5/14-3(q)(1) (West 2018).

¶ 5        Pursuant to section 14-3(q)(2) of the Criminal Code of 2012 (Code) (*id.* § 14-3(q)(2)), the assistant state's attorney provided a "written memorialization" of the officer's request for an eavesdropping device in a form titled, "Qualified Offense Eavesdrop Exemption Form." On the form, the assistant state's attorney described the "reasonable cause" as follows: "[Confidential informant] advised his/her ability to purchase heroin from a black male known to the [confidential informant] as 'KG.' " The form contained the following description of the suspect: "Unknown Black Male known to the [confidential informant] as 'KG.' "

¶ 6        Defendant filed a motion to suppress evidence, arguing that there was lack of reasonable cause for the authorization of the use of an eavesdropping device. A hearing was held on the motion to suppress. Over defendant's objection, the court allowed the State to present the testimony of Kyle Jensen, a police officer employed by the Kankakee County Sheriff's Office.

¶ 7 Jensen testified that he worked with the confidential informant on the date of the incident. The informant had been working with law enforcement for approximately two years at that time. Jensen had worked with the informant on approximately 15 to 20 drug investigations, and she purchased controlled substances approximately 30 to 35 times during these investigations. She initially worked as an informant to work off a criminal charge. Once she had worked off the charge, she continued working with the police as a paid informant. The informant had never testified in a case she had been involved in.

¶ 8 On the date of the incident, Jensen called Assistant State's Attorney Marlow Jones on the phone and requested permission to conduct a consensual overhear. A consensual overhear gave the police authority to make an audio recording of a drug transaction. Jensen told Jones that he had a confidential informant who stated that she could buy narcotics from an individual whose nickname was "KG." Jensen told Jones that the informant had indicated that KG gave her his phone number and told her to call if she "needed anything." Jensen and Jones discussed the informant's past work with the police, including how many drug buys she had done and the number of targets from whom she had purchased narcotics. Jones asked if she had purchased from KG before, and Jensen told him she had not. At the time of the overhear request, the informant had conducted at least 20 drug buys. Jones granted Jensen permission to conduct the overhear. The informant conducted the buy 27 minutes later.

¶ 9 Jensen testified that the police did not know defendant's identity at the time of the buy. They only knew his nickname. A couple days prior to the buy, officers had driven around with the informant looking for defendant. They were unable to find him. Defense counsel asked Jensen if "everything flowed from [the] eavesdropping petition," since the police did not know the name of the target prior to the transaction. Jensen replied, "Correct." Jensen acknowledged that he utilized

3

the 24-hour overhear procedure from section 14-3(q) of the Code rather than seeking a judicially authorized eavesdropping petition. Jensen stated that he did not seek a judicially authorized eavesdropping petition because the type of investigation he was conducting was "fluid" and conducted quickly. Jensen stated that he believed that the judicially authorized petitions were for longer investigations, and this investigation only involved one drug purchase.

¶ 10     During arguments on the motion, the State explained that police used confidential informants, like the one in this case, by "put[ting] a camera on this person" so that she "will successfully go and buy drugs." The confidential informant in this case "had successfully done exactly what it is they were planning on doing, which is put on a mic, put on a camera, and go and complete a drug transaction." This informant had purchased drugs for the police in this way more than 20 times before her encounter with defendant. The State explained: "You put a camera on this person because they are going to do what they have successfully done in the past, which is purchase cocaine, heroin, what have you."

¶ 11     After hearing arguments, the court granted defendant's motion to suppress. The court found that the exemption form's description of the suspect as a black male did not include a particularized description of an individual. The court also found that the form did not include a sufficient statement of reasonable cause and did not describe a designated period of time. The court ruled that the audio and video recordings were suppressed because they were obtained in violation of the eavesdropping statute. The court further ruled that the confidential informant would be barred from testifying.

¶ 12     The State filed a motion to reconsider, arguing that the court should not have suppressed the confidential informant's testimony or the video portion of the recording. The court denied the

4

motion, finding that the informant's testimony and the video recording were fruit of the poisonous tree. The State filed a certificate of impairment, and this appeal followed.

¶ 13                                                    II. ANALYSIS

¶ 14        On appeal, the State concedes that the circuit court properly suppressed the audio recording of the transaction because the requirements of section 14-3(q) of the Code (*id.* § 14-3(q)) were not met. However, the State contends that the court erred in suppressing the testimony of the confidential informant and the video recording without audio. The State contends that the video recording and informant's testimony were not barred by the eavesdropping statute and were not fruit of the poisonous tree.

¶ 15        The question before this court is solely a legal question; therefore, the standard of review is *de novo*. *People v. Babolcsay*, 368 Ill. App. 3d 712, 714 (2006).

¶ 16        The eavesdropping statute provides that a person commits the offense of eavesdropping when he or she knowingly and intentionally "[u]ses an eavesdropping device, in a surreptitious manner, for the purpose of transmitting or recording all or any part of any private conversation to which he or she is a party unless he or she does so with the consent of all other parties to the private conversation." 720 ILCS 5/14-2(a)(2) (West 2018). The eavesdropping statute also prohibits using or disclosing "any information which [the person] knows or reasonably should know was obtained from a private conversation or private electronic communication in violation of this Article, unless he or she does so with the consent of all of the parties." *Id.* § 14-2(a)(5).

¶ 17        An "eavesdropping device" is defined as "any device capable of being used to hear or record oral conversation or intercept, or transcribe electronic communications whether such conversation or electronic communication is conducted in person, by telephone, or by any other means." *Id.* § 14-1(a). "Private conversation" is defined as "any oral communication between 2 or

more persons, whether in person or transmitted between the parties by wire or other means, when one or more of the parties intended the communication to be of a private nature under circumstances reasonably justifying that expectation." *Id.* § 14-1(d).

¶ 18 Section 14-5 of the statute provides: "Any evidence obtained in violation of this Article is not admissible in any civil or criminal trial ***." *Id.* § 14-5. This provision is "the legislature's express adoption of the 'fruit of the poisonous tree' doctrine." *In re Marriage of Almquist*, 299 Ill. App. 3d 732, 737 (1998) (citing *People v. Maslowsky*, 34 Ill. 2d 456 (1966)). "Under the 'fruit of the poisonous tree' doctrine, an unlawful search taints not only the evidence obtained from the search, but also evidence derivative of the search." *Id.* (citing *Wong Sun v. United States*, 371 U.S. 471 (1963)).

¶ 19 Evidence should be suppressed where "the initial illegality 'led *directly* to any of the evidence actually used against the defendant at trial.' " (Emphasis in original.) *United States v. Smith*, 155 F.3d 1051, 1061 (9th Cir. 1998) (quoting *United States v. Carsello*, 578 F.2d 199, 203 (7th Cir. 1978)). "When the defendant has established a 'primary illegality' and shows its connection to what are alleged to be the fruits of the illegality, the burden then shifts to the prosecution to establish 'that the challenged evidence was obtained by means sufficiently distinguishable to be purged of the primary taint.' " *People v. Satek*, 78 Ill. App. 3d 543, 551 (1979) (quoting *People v. Robbins*, 54 Ill. App. 3d 298, 305 (1977)).

¶ 20 The statute's exclusionary rule applies to information derived from a process initiated by an unlawful act but does not extend to evidence obtained from an independent source. *People v. Seehausen*, 193 Ill. App. 3d 754, 761 (1990). If knowledge of facts is gained from an independent source, those facts may be proven like any other evidence, but knowledge gained by the government's wrongdoing is inadmissible. *Wong Sun*, 371 U.S. at 485. The "proper test to be

6

applied" is " '[w]hether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.' " (Internal quotation marks omitted.) *United States v. Wade*, 388 U.S. 218, 241 (1967) (quoting *Wong Sun*, 371 U.S. at 488).

¶ 21 The independent source doctrine applies to "evidence acquired in a fashion untainted by the illegal evidence-gathering activity." *Murray v. United States*, 487 U.S. 533, 537-38 (1988). Where an illegal government activity "has given investigators knowledge of facts x and y, but fact z has been learned by other means, fact z can be said to be admissible because derived from an 'independent source.' " *Id.* at 538. The doctrine applies where a lawful seizure is genuinely independent of a tainted one. *Id.* at 542.

¶ 22 The independent source doctrine allows admission of evidence that has been discovered by means wholly independent of unlawful activity. *Nix v. Williams*, 467 U.S. 431, 443 (1984); see also *United States v. San Martin*, 469 F.2d 5, 8 (2d Cir. 1972) (independent source must be entirely separate from illegal eavesdropping); *Simmons v. United States*, 354 F. Supp. 1383, app. C at 1394 (N.D.N.Y. 1973) (evidence obtained from an "independent source" cannot be obtained from or as a consequence of lawless official acts). For the doctrine to apply, there must not be any connection between the government's illegal conduct and the State's proof. See *Nardone v. United States*, 308 U.S. 338, 341 (1939); *People v. Porcelli*, 25 Ill. App. 3d 145 (1974). Independent, untainted sources of evidence include testimony from witnesses who acted voluntarily, free from coercion, and not part of the illegal government activity. See *United States ex rel. Conroy v. Bombard*, 426 F. Supp. 97, 106 (S.D.N.Y. 1976); see also *State v. Pierson*, 248 N.W.2d 48, 52 (S.D. 1976) (evidence of drugs found from individuals cleaning motel room with no relation to illegal wiretap);

7

*People v. Mendez*, 268 N.E.2d 778, 782 (N.Y. 1971) (surveillance leading to a witness was source of information independent of illegal wiretap).

¶ 23    "The fundamental purpose of *** eavesdropping statutes is to prohibit unauthorized eavesdropping and the use of evidence gained by such eavesdropping." *In re Cook County Grand Jury*, 113 Ill. App. 3d 639, 646 (1983). "The spirit and purpose of the [Illinois] eavesdropping statute are not only to ensure that all eavesdropping is subject to judicial supervision but to prevent unwarranted intrusions into an individual's privacy." *People v. Monoson*, 75 Ill. App. 3d 1, 8 (1979). Suppression of illegally recorded evidence is required "where there is a failure to satisfy any of the statutory requirements that directly and substantially implement the legislative intent to limit the use of overhears." *People v. Cunningham*, 2012 IL App (3d) 100013, ¶ 22.

¶ 24    Courts in several states have ruled that video and/or testimonial evidence must be suppressed where, as here, it is connected to an illegal recording. See *Commonwealth v. Dunnavant*, 107 A.3d 29, 31 (Pa. 2014) (*per curiam*); *State v. Salinas*, 853 P.2d 439, 443 (Wash. 1993) (*en banc*); *State v. Fjermestad*, 791 P.2d 897, 902 (Wash. 1990) (*en banc*); *State v. Lo*, 675 P.2d 754, 760 (Haw. 1983); *State v. Williams*, 617 P.2d 1012, 1019 (Wash. 1980) (*en banc*); *State v. Mullens*, 650 S.E.2d 169, 190 (W. Va. 2007); *People v. Dezek*, 308 N.W.2d 652, 657 (Mich. Ct. App. 1981) (*per curiam*); but see *Frio v. Superior Court*, 250 Cal. Rptr. 819, 825 (Cal Ct. App. 1988) (holding that record producer could testify about conversations he took part in even though they were illegally recorded).

¶ 25    In 1980, the Washington Supreme Court held that, where a police officer and civilian informant knowingly took part in the illegal recording of a conversation with the defendant, the State was prohibited from admitting into evidence the recordings of the conversation as well as the testimony of the officer and informant who participated in the conversation. *Williams*, 617 P.2d

at 1019. The court held that suppression of the testimony of the officer and informant was necessary to accomplish the purpose of the state's privacy act, which was " 'protection of the privacy of individuals from public dissemination, even in the course of a public trial, of illegally obtained information.' " (Emphasis omitted.) *Id.* (quoting *State v. Wanrow*, 559 P.2d 548, 555 (Wash. 1977) (*en banc*)). Ten years later, the Washington Supreme Court ruled that a party to an illegally recorded conversation was precluded from testifying not only about what he heard, but also about what he witnessed, during the conversation. *Fjermestad*, 791 P.2d at 902. The court stated:

> "We hold that when an officer knowingly transmits a private conversation, without court authorization or without the consent of all the parties, any evidence obtained, including simultaneous visual observation and assertive gestures, is inadmissible in a criminal trial. This decision does not hamstring the goals of law enforcement, but only preserves the integrity of the police and the privacy of individuals.
>
> The statute makes clear provisions for obtaining court authorization based on probable cause requiring an independent review of the facts by a superior court judge. If after reviewing the application, the judge does or does not issue the order, then the goals and policy of the legislature are met. However, once the police step outside the boundaries delineated by the law, we have no choice but to make inadmissible any information obtained." *Id.*

Three years after that, the Washington Supreme Court held that when a police officer illegally wore a recording device, "all information obtained during the time [the officer] was wearing the

9

body wire, whether or not that information was obtained through the aid of the body wire," had to be suppressed. *Salinas*, 853 P.2d at 443.

¶ 26     In this state, courts have held that testimony about an illegally recorded conversation is admissible only if the presence of the illegal recording device did not lead to the conversation about which the testimony is sought to be introduced. See *People v. Gervasi*, 89 Ill. 2d 522, 530 (1982) (testimony of officers admissible where it was not "induced or influenced by the eavesdropping"); *Babolcsay*, 368 Ill. App. 3d at 716 (officer's testimony admissible because "videotaping activity did not lead to the officer's conversation"); *People v. Mosley*, 63 Ill. App. 3d 437, 444 (1978) (officer's testimony about conversations with defendant admissible because conversations "would have occurred even if [the officer] had not received approval to carry a recorder on his person"); *Porcelli*, 25 Ill. App. 3d at 150 (officer could testify about conversation with defendant because officer "did not telephone [defendant] just so that a recording could be made"). Where prospective testimony is tainted by an unlawful recording, and the State cannot show that the challenged testimony "was obtained by means sufficiently distinguishable to be purged of the primary taint," such evidence should be suppressed. (Internal quotation marks omitted.) See *Satek*, 78 Ill. App. 3d at 551.

¶ 27     Here, the illegal recording led directly to the evidence the State seeks to use against defendant. The video portion of the recording and testimony from the confidential informant were part of the illegal recording, not "independent sources" of evidence that could be "purged of the primary [illegal] taint." At the hearing on defendant's motion to suppress, the State explained how drug transactions involving informants, like the one in this case, are conducted. Police "put a camera on this person," and she "successfully go[es] and buy[s] drugs." Thus, the presence of the illegal recording device led to the conversation and transaction between the informant and

defendant; therefore, testimony about the conversation and video of the transaction are inadmissible. See *Gervasi*, 89 Ill. 2d at 530; *Babolcsay*, 368 Ill. App. 3d at 716; *Mosley*, 63 Ill. App. 3d at 444; *Porcelli*, 25 Ill. App. 3d at 150.

¶ 28    We recognize that our decision in this case is contrary to this court's recent decision in *People v. Davis*, 2020 IL App (3d) 190272. In *Davis*, the majority held that a video recording of a drug transaction and testimony from a confidential informant involved in the transaction were admissible, even though the transaction was illegally recorded. *Id.* ¶ 13. We disagree with the majority's decision in *Davis.*

¶ 29    In *Davis*, the majority relied on *Gervasi*, 89 Ill. 2d 522, to support its decision to allow the evidence against defendant. In *Gervasi*, our supreme court ruled that where court reporters used illegal recording devices to listen to and transcribe telephone calls between the defendant and police officers, the testimony of the officers who took part in the conversations was admissible. *Id.* at 528-31. The court stated: "The officers' knowledge of and [their] testimony concerning the contents of the phone conversations in our case were completely independent of the illegal eavesdropping. Therefore, there is no indication that the testimony of these officers was in any way induced or influenced by the eavesdropping." *Id.* at 530. The court ruled that the officers' testimony as to the telephone conversations should not be suppressed because "[t]he officers did not surreptitiously obtain information from the defendants." *Id.* at 531.

¶ 30    Unlike the officers in *Gervasi*, the confidential informant in this case secretly recorded defendant, and the conversation between the informant and defendant was a direct result of the illegal recording. While the conversations the police officers testified to in *Gervasi* were motivated independently of the illegal eavesdropping, the informant's contact with defendant was motivated by the illegal recording equipment. Thus, any and all evidence of the transaction, including

11

testimony of the informant and the video recording of the transaction, should have been suppressed. See *Smith*, 155 F.3d at 1061; *Salinas*, 853 P.2d at 443; *Fjermestad*, 791 P.2d at 902; *Williams*, 617 P.2d at 1019.

¶ 31    In this case, the trial court properly granted defendant's motion to suppress based on the language, as well as the purpose, of the eavesdropping statute. The eavesdropping statute provides, "[a]ny evidence obtained in violation of this Article is not admissible in any civil or criminal trial." 720 ILCS 5/14-5 (West 2018). The State sought to introduce evidence that was obtained in violation of section 14-3(q) of the Code. The plain language of the statute prohibits the admission of such evidence. See *Cunningham*, 2012 IL App (3d) 100013, ¶ 22; see also *Salinas*, 853 P.2d at 443 (holding that Washington eavesdropping statute with nearly identical language prohibited the admission of "all information obtained during the time [the officer] was wearing the body wire, whether or not that information was obtained through the aid of the body wire").

¶ 32    Additionally, allowing the State to present video evidence and/or testimony of the transaction would violate the purpose of the eavesdropping statute, which is "to prevent unwarranted intrusions into an individual's privacy." *Monoson*, 75 Ill. App. 3d at 8. The unwarranted intrusion of an individual's privacy can only be protected by suppression of all evidence connected to an unlawful eavesdropping recording, including all portions of the recording and testimony regarding the contents of the recording. See *Williams*, 617 P.2d at 1019; see also *Wong Sun*, 371 U.S. at 485 ("[T]estimony as to matters observed during an unlawful invasion has been excluded in order to enforce the basic constitutional policies."). Suppressing evidence and testimony about an illegally recorded event "preserves the integrity of the police and the privacy of individuals." *Fjermestad*, 791 P.2d at 902.

12

¶ 33    We affirm the trial court's order suppressing all portions of the illegal recording, as well as the confidential informant's testimony regarding her conversation with defendant.

¶ 34                                    III. CONCLUSION

¶ 35    The judgment of the circuit court of Kankakee County is affirmed.

¶ 36    Affirmed.

¶ 37    JUSTICE HOLDRIDGE, dissenting:

¶ 38    For the reasons that follow, I would reverse the trial court's order suppressing the testimony of the confidential informant and the video recording of the encounter. Accordingly, I respectfully dissent.

¶ 39    I would find that the testimony of the informant and the video recording of the encounter were admissible under the plain language of the eavesdropping statute. Section 14-5 of the Code (720 ILCS 5/14-5 (West 2018)) provides that "[a]ny evidence obtained in violation of this Article is not admissible in any civil or criminal trial." Thus, under the plain language of section 14-5, evidence must be obtained through the illegal eavesdropping activity prohibited by section 14-2 of the Code (*id.* § 14-2) in order to be subject to suppression. See *Davis*, 2020 IL App (3d) 190272, ¶¶ 11-12.

¶ 40    In *Davis*, we held that the testimony of a confidential informant and a video recording of a drug transaction captured by the informant simultaneously with an illegal audio recording were not subject to suppression under section 14-5. *Id.* ¶ 13. The *Davis* majority reasoned that the video recording and the testimony of the informant derived independently from the illegal audio recording of the transaction. *Id.*

¶ 41    In the instant case, like in *Davis*, the prospective testimony of the confidential informant and the video recording without audio were not subject to suppression under the plain language of

13

section 14-5 of the Code. Neither of these pieces of evidence was obtained from illegal eavesdropping activity. The informant's knowledge of the transaction was due to her actual participation in the transaction, not due to eavesdropping. The video recording without audio did not constitute eavesdropping because it was not a recording of a private conversation, *i.e.*, an oral communication that one party intended to be private. See 720 ILCS 5/14-1(d), 14-2(a)(2) (West 2018). Also, the video recording without audio was not information obtained from a private conversation. See *id.* § 14-2(a)(5).

¶ 42    I disagree with the majority's assertion that the plain language of the eavesdropping statute prohibited the admission of the informant's testimony and the video recording because they were "obtained in violation of section 14-3(q) of the Code." *Supra* ¶ 31. It is undisputed that the requirements of section 14-3(q) of the Code (720 ILCS 5/14-3(q) (West 2018)) were not met in this case. However, section 14-3(q) sets forth an *exemption* to the offense of eavesdropping. The failure to satisfy the requirements of this exemption was not itself a violation of the eavesdropping statute. It merely meant that the informant's activities were not exempt from the offense of eavesdropping as set forth in section 14-2(a) of the Code (*id.* § 14-2(a)). Because the exemption did not apply, the audio recording was obtained in violation of section 14-2(a)(2) of the Code (*id.* § 14-2(a)(2)). However, as discussed above, I do not believe the informant's testimony or video recording without audio were obtained in violation of any part of section 14-2(a).

¶ 43    I also disagree with the majority's interpretation of *Gervasi*. The majority asserts that the officers in *Gervasi* were permitted to testify at trial because the conversations at issue "were motivated independently of the illegal eavesdropping." *Supra* ¶ 30. The majority contends that this case is distinguishable from *Gervasi* because the informant, rather than a third party, recorded the

14

conversation with the defendant, and the conversation was a direct result of the illegal recording. I do not believe that the facts in *Gervasi* support this distinction.

¶ 44     In *Gervasi*, a police officer believed that one of the defendants, John Gervasi, was going to offer him a bribe to help one of Gervasi's clients. *Gervasi*, 89 Ill. 2d at 524. The officer devised a plan to monitor the conversations between him and Gervasi. *Id.* Telephone conversations between the officer and Gervasi were overheard and transcribed by a court reporter. *Id.* at 524-25. The court reporter listened to the conversations on an extension telephone with the speaking element removed. *Id.* Most of these conversations occurred on the officer's home telephone, and the court reporter was present in the officer's home while listening to the conversations. *Id.* Several conversations between the officer and the other defendant were recorded in the same manner. *Id.* at 525. Gervasi's conversations with another officer and an assistant state's attorney were also recorded in this manner. *Id.*

¶ 45     While the officers and the assistant state's attorney in *Gervasi* did not wear recording devices, I do not believe that their use of the court reporters differed in any significant way from the informant wearing a buttonhole camera in the instant case. In *Gervasi*, the officers and assistant state's attorney were aware of the presence of the court reporters and had planned for the court reporters to be present to overhear and transcribe the conversations. Indeed, many of the transcriptions in *Gervasi* were made by court reporters located inside an officer's home. Like the informant in the instant case, the officers and assistant state's attorney in *Gervasi* knew that their conversations with the defendant were being recorded and had arranged for this to happen.

¶ 46     Nevertheless, the court in *Gervasi* held that the prospective testimony of the officers and assistant state's attorney was not fruit of the poisonous tree because their "knowledge [of the conversations] was not derived from the court reporters' eavesdropping activities." *Id.* at 529. The

15

court reasoned that there was no "primary illegality" in the officers' and assistant state's attorney's "knowledge of the content of the conversations." *Id.* The court further reasoned:

> "Here the officers were the actual participants in the conversations. Their knowledge of what was said was not derived from any illegal action. They spoke directly with the defendants, and most of the conversations were initiated by the defendants and none of them were the result of illegal eavesdropping. The officers were the participants in the conversations and were not the eavesdroppers." *Id.* at 530.

¶ 47 In the instant case, like in *Gervasi*, there was no primary illegality to the informant's knowledge of the contents of her conversation with the defendant. Like in *Gervasi*, the informant's knowledge of the conversation derived from her actual participation in the conversation, not from the illegal audio recording. While the informant was making an illegal audio recording of the conversation while it was happening, the conversation was not the result of that illegal recording.

¶ 48 Similarly, the video recording was not subject to suppression as fruit of the poisonous tree because it was not obtained by exploiting the illegal audio recording. It was recorded simultaneously with the improper audio recording, and, accordingly, it did not derive from the audio recording.

¶ 49 The majority cites several appellate court decisions—*Babolcsay*, 368 Ill. App. 3d at 716; *Mosley*, 63 Ill. App. 3d at 444; *Porcelli*, 25 Ill. App. 3d at 150—for the proposition that an illegally recorded conversation is admissible only if the conversation would have occurred regardless of the illegal recording. The courts in *Babolcsay*, *Mosley*, and *Porcelli* held that the illegally recorded conversations at issue derived from independent sources such that the fruit of the poisonous tree doctrine did not apply because the conversations would have occurred regardless of whether they

16

were recorded. *Babolcsay*, 368 Ill. App. 3d at 716; *Mosley*, 63 Ill. App. 3d at 444; *Porcelli*, 25 Ill. App. 3d at 150. The majority contends that the informant's testimony and the video recording are not independent sources that could be purged from the taint of the illegality of the overhear because the presence of the recording device led to the conversation between the informant and the defendant. However, I do not believe that the independent source doctrine is applicable to this case.

¶ 50        Under the fruit of the poisonous tree doctrine, the question is " 'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.' " *Wong Sun*, 371 U.S. at 488 (quoting John M. Maguire, Evidence of Guilt: Restrictions Upon Its Discovery or Compulsory Disclosure § 5.07, at 221 (1959)). "If an accused establishes the 'primary illegality' and shows a connection between the illegality and what are alleged to be the fruits of the illegality, the prosecution will have the burden of establishing by clear and convincing evidence that the challenged evidence has come from an independent source." *People v. Wilson*, 60 Ill. 2d 235, 238 (1975). Thus, it is only necessary to show that the challenged evidence derives from an independent source if the primary illegality has been established.

¶ 51        However, under the holding in *Gervasi*, there is no primary illegality to be exploited if a witness is an actual participant in a conversation. Accordingly, the witness's knowledge of the conversation does not derive from illegal eavesdropping activity. *Gervasi*, 89 Ill. 2d at 529. As I have found that there was no primary illegality with regard to the informant's knowledge of her conversation with the defendant and the video recording (*supra* ¶¶ 45-48), I do not believe that it

17

is necessary to consider whether this evidence derived from an independent source, as in *Babolcsay*, *Mosley*, and *Porcelli*.

¶ 52 Finally, I disagree with the majority's assertion that allowing the State to present the video recording and the informant's testimony would violate the purpose of the eavesdropping statute, which the majority contends is " 'to prevent unwarranted intrusions into an individual's privacy.' " *Supra* ¶ 32 (quoting *Monoson*, 75 Ill. App. 3d at 8). The majority over-generalizes the purpose of the eavesdropping statute. Our supreme court has held that the purpose of the eavesdropping statute is to "protect *conversational* privacy." (Emphasis added.) *People v. Clark*, 2014 IL 115776, ¶ 22. The eavesdropping statute regulates the surreptitious overhearing, transmitting, recording, intercepting, and/or transcribing of private conversations—*i.e.*, oral communications that at least one party intends to be private—in various circumstances. See 720 ILCS 5/14-1(d), 14-2(a) (West 2018). Neither the informant's testimony regarding her conversation with the defendant nor a video recording of the encounter without audio fall under the purview of eavesdropping statute.

**No. 3-19-0504**

| | |
|---|---|
| **Cite as:** | *People v. Harris*, 2020 IL App (3d) 190504 |
| **Decision Under Review:** | Appeal from the Circuit Court of Kankakee County, No. 19-CF-61; the Hon. Clark E. Erickson, Judge, presiding. |
| **Attorneys for Appellant:** | Jim Rowe, State's Attorney, of Kankakee (Patrick Delfino, Thomas D. Arado, and Mark A. Austill, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| **Attorneys for Appellee:** | James E. Chadd, Peter A. Carusona, and Sean Conley, of State Appellate Defender's Office, of Ottawa, for appellee. |