**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2021 IL App (3d) 180633-U

Order filed

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2021

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 14th Judicial Circuit, Henry County, Illinois, |
| Plaintiff-Appellee, | ) ) | Appeal No. 3-18-0633 |
| v. | ) ) | Circuit No. 16-CF-260 |
| HORACE J. JOHNSON, | ) ) ) | Honorable Terence M. Patton, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE HOLDRIDGE delivered the judgment of the court.
Justices Lytton and Schmidt concurred in the judgment.

_____

**ORDER**

¶ 1    *Held*:  (1) The defendant did not receive ineffective assistance counsel.

¶ 2        (2) Two of the defendant's convictions for unlawful delivery of a controlled substance violate the one-act, one-crime rule.

¶ 3    The defendant, Horace J. Johnson, appeals from his four unlawful delivery of a controlled substance convictions. The defendant argues: (1) he received ineffective assistance of trial and posttrial counsel, and (2) two of his convictions must be vacated under the one-act, one-crime rule.

## I. BACKGROUND

¶ 5       The State charged the defendant with two counts of unlawful delivery of a controlled substance within 1000 feet of a school (720 ILCS 570/407(b)(2) (West 2016)), two counts of unlawful delivery of a controlled substance (*id.* § 401(d)(i)), one count of unlawful delivery of a controlled substance within 1000 feet of a church (*id.* § 407(b)(2)), and one count of unlawful delivery of a controlled substance within 1000 feet of public housing (*id.*). Relevant to this appeal, count I alleged that on May 31, 2016, the defendant delivered less than 1 gram of a substance containing cocaine within 1000 feet of a school, a Class 1 felony. Count II alleged that on the same date, the defendant delivered less than 1 gram of a substance containing cocaine within 1000 feet of a church, a Class 1 felony. Count IV alleged that on June 3, 2016, the defendant delivered less than 1 gram of a substance containing cocaine within 1000 feet of a school, a Class 1 felony. Count V alleged that on the same date, the defendant delivered less than 1 gram of a substance containing cocaine within 1000 feet of public housing, a Class 1 felony. The court appointed counsel to represent the defendant.

¶ 6       Defense counsel filed a motion to suppress evidence. The motion alleged that the Kewanee Police Departments' applications to the Henry County State's Attorney for an electronic overhear on May 31, and June 2, 2016, were false or made with reckless disregard for the truth. Specifically, the police did not verify whether the text messages referenced in the applications that set up the controlled buys were sent to the defendant or the defendant's phone, citing *Franks v. Delaware*, 438 U.S. 154 (1978).

¶ 7       Attached as an exhibit to the defendant's motion was a copy of the May 31, 2016, overhear application. Officer Eric Peed requested, via e-mail, a 24-hour overhear exemption to record a confidential informant, identified at trial as Justin Potter, purchase half a gram of crack

cocaine from the defendant. Peed had not used Potter as an informant before. Potter had known the defendant for five months and purchased crack cocaine from the defendant on two prior occasions. Potter was also present when the defendant sold crack cocaine on six other occasions. Peed observed Potter send text messages to the defendant. Peed and Officer Stephen Kijanowski believed that the language used in the messages was consistent with setting up a narcotics transaction.

¶ 8    In a responding e-mail, Assistant State's Attorney Cathy Runty asked if the phone number Potter used matched the defendant's phone number. Peed replied, the phone number the police had for the defendant did not match but noted it was not uncommon for individuals to change their cell phone number frequently, especially with prepaid phones. Runty authorized the overhear to run from May 31 to June 1, 2016.

¶ 9    Peed sent a second request, via e-mail, for a 24-hour overhear exemption to purchase 1.5 grams of crack cocaine from the defendant. The written application was largely the same as the May 31 application but included the additional details that Potter had participated in a controlled buy that obtained approximately .45 grams of crack cocaine from the defendant. Runty provided the authorization for the overhear to run from June 2 to June 3, 2016.

¶ 10    At the hearing on the motion to suppress, the defendant failed to appear. The court issued a warrant for his arrest and proceeded without the defendant.

¶ 11    Trial counsel argued the e-mail chain that preceded both overhear authorizations did not identify the phone number that Potter sent text messages to, nor did it establish that that phone number belonged to the defendant. Counsel contended that submitting this information in the overhear exemption applications exhibited a reckless disregard for the truth. Counsel also argued that the statute clearly required a showing of reasonable cause.

¶ 12	The court noted that the case law reviewing judicially supervised eavesdrop exemptions used the "reasonable cause" standard and " 'reasonable cause' means 'probable cause.' " The court reasoned that the legislature intended a similar interpretation of "reasonable cause" in the State's-attorney-authorized eavesdrop exemption. The court also noted that any restrictions placed on one-party eavesdropping were statutory and not constitutional. The court found the State did not submit false information or make a statement with reckless disregard for the truth. The court found the information in the eavesdrop applications provided reasonable cause to issue the overhear exemption and denied the motion to suppress.

¶ 13	The cause proceeded to a jury trial *in absentia*.

¶ 14	Peed testified that on May 31, 2016, Potter arranged to purchase crack cocaine from the defendant via text message. Peed gave Potter $60 and set up a recording device. Peed and two other officers drove Potter to a location near the controlled purchase site. Before the transaction occurred, Peed drove past Potter's location and saw Potter with the defendant. Peed reported that Kijanowski observed the transaction. Potter purchased approximately .45 grams of crack cocaine from the defendant. According to Peed, the controlled buy occurred 605 feet from a church and 1000 feet from a school.

¶ 15	Peed testified that before the May 31 controlled buy, he was "familiar" with the defendant. Peed described the defendant as a "thin African-American male" with medium-length hair. Peed identified the defendant from a photograph.

¶ 16	On cross-examination, trial counsel asked Peed what steps he took before setting up the controlled buy. Peed said that he conducted a criminal history check of the defendant.

¶ 17	During Peed's testimony, the State introduced a recording of the May 31, 2016, controlled buy. The video shows the police officers setting up a camera on Potter's person. Potter

4

rides with the officers to a location where he exits the vehicle and walks for a few minutes before he receives a phone call. Potter can be heard telling the individual on the phone that he thought he was near the individual's location. Potter also says that he is wearing black clothes. Potter approaches a house with a porch and starts talking to another individual. Approximately 15 minutes into the video, Potter says "good" and "thank you." Potter then walks until he meets the officers in a pickup truck. Inside the truck, Potter says "he gave me two nice fifties. *** Pretty decent for $60 bucks. That ain't too bad from [the defendant]."

¶ 18    Kewanee Police Sergeant Justin Reed testified that, on May 31, 2016, he assisted Peed with a controlled buy. Reed was familiar with the defendant, as he was present when the defendant was arrested in the past. Reed identified the defendant from a photograph. During the May 31, controlled purchase, Reed drove Peed and Potter to the location of the controlled buy. After Potter exited the vehicle, Reed saw Potter and the defendant meet. At the time, the defendant was wearing a white shirt. After the controlled buy was complete, Reed drove Potter to the Kewanee Police Department.

¶ 19    Kijanowski testified that he conducted surveillance for the May 31, 2016, controlled buy. Kijanowski said "I've known [the defendant] through my police job for almost my whole career." Kijanowski identified the defendant from a photograph. Kijanowski saw the defendant leave a residence and meet with Potter. Potter and the defendant then had a hand-to-hand transaction. At the time, the defendant was wearing shorts and a white shirt.

¶ 20    On cross-examination, Kijanowski said that before the controlled buy, Potter had been arrested on retail theft charges. Potter agreed to help the police even though the officers told Potter that they could not promise him anything in return.

5

¶ 21    At the beginning of the second day of trial, trial counsel made a motion *in limine* to prohibit the State's witnesses from mentioning the defendant's criminal history. Counsel noted that the previous day, the State's questions prompted responses indicating that the defendant had prior arrests. The State did not object, and the court granted the motion noting that the State has to elicit testimony that the officers knew what the defendant looked like, and that testimony might permit the jury to infer that the police knew the defendant from a prior interaction.

¶ 22    Forensic scientist Michelle Dierker testified that she tested two samples sent to her by the police. Both samples tested positive for the presence of cocaine.

¶ 23    Potter testified that he was currently incarcerated for aggravated domestic battery, and he also had prior convictions for retail theft and theft. In 2016, Potter cooperated with the Kewanee Police Department with the hope that his assistance would lead to a reduced sentence in his retail theft case. Potter told the police that he could purchase crack cocaine from the defendant. Potter identified the defendant from a photograph.

¶ 24    On May 31, 2016, Potter met with officers to set up the first controlled buy. An officer drove Potter to the location for the controlled buy. Potter met the defendant, handed him $100 and received one gram of crack cocaine. Potter departed and met with the officer that had dropped him off. The State played the recording of the buy for the jury.

¶ 25    Potter reviewed the recording and said that when he says "Good," the transaction is complete. Potter is also heard telling an officer in the car that picked him up that "That ain't bad for $60." Potter explained that he misspoke when he initially testified that he paid $100.

¶ 26    On cross-examination, Potter explained that the State initially offered to reduce his retail theft charge from a felony to a misdemeanor, but the State withdrew this offer when Potter was charged with theft. At the time of the buy, Potter did not use crack cocaine and had not

6

purchased it before. However, Potter had been around people who had purchased crack cocaine from the defendant.

¶ 27 Following Potter's testimony, the Sate recalled Kijanowski, Peed, and Reed, to testify regarding the June 3, 2016, controlled buy. Kijanowski testified that on June 3, 2016, Potter arranged to purchase crack cocaine from the defendant via text message. An officer gave Potter $150 of recorded bills. Reed and Kijanowski drove Potter to the prearranged location and dropped him off. Kijanowski lost sight of Potter before the exchange occurred. When Potter returned, he gave Kijanowski a small plastic bag that contained the crack cocaine.

¶ 28 Peed testified that on June 3, 2016, he searched Potter and gave him the marked bills for the controlled buy. Peed then conducted surveillance on the buy location. Peed saw Potter approach the location, but he was unable to see the transaction.

¶ 29 On cross-examination, Peed said he believed that Potter told him that he had purchased crack cocaine from the defendant in the past.

¶ 30 Reed testified that on June 3, 2016, he drove Kijanowski and Potter to the controlled buy location. He dropped Potter off, and he and Kijanowski conducted surveillance. Reed did not see the controlled buy occur.

¶ 31 Kewanee Police Officer Eric Hamilton testified that he provided surveillance for the June 3, 2016, controlled buy. Hamilton knew the defendant from prior encounters. Before the buy, Hamilton saw the defendant sitting on the front porch of a residence. Potter approached and sat next to the defendant. Hamilton then observed a hand-to-hand transaction. No one else approached or spoke with the defendant and Potter while they were on the porch. After the transaction, Potter got up and walked away. The defendant followed Potter until Hamilton could

7

no longer see both individuals. Hamilton said the buy location was 651 feet from a school and 50 feet from public housing.

¶ 32    The State also recalled Potter to testify. Potter said that on June 3, 2016, he worked with the police to set up a second controlled buy from the defendant. Potter arranged the buy location via text message with the defendant, and officers set up a recording device. Potter purchased crack cocaine from the defendant on the front porch of a house.

¶ 33    During Potter's testimony, the State played the surveillance recording of the June 3, 2016, controlled buy. Potter identified the defendant in the recording. Potter also indicated the point in the recording where the transaction occurred.

¶ 34    The video shows the officers setting up the recording device. The officers transport Potter to a location near where the controlled buy was to occur. Potter exits the vehicle and walks for several minutes before meeting an individual wearing a white shirt on the front porch of a house. Initially, the individual is speaking on a telephone and indicates his name is "Johnson." After the individual gets off the phone, he and Potter converse for a few minutes before Potter leaves the porch and meets with the officers.

¶ 35    The jury found the defendant guilty of counts I, II, IV, and V.

¶ 36    Counsel filed a motion for new trial that alleged, in part, that the court erred in denying the motion to suppress. Counsel also alleged his own ineffectiveness for arguing a fourth amendment analysis that did not apply to statutory overhear exemptions and for failing to object to the police officers' trial testimony about their prior contact with the defendant.

¶ 37    The court allowed counsel to withdraw and appointed new posttrial counsel to represent the defendant. Posttrial counsel filed an amended motion for new trial that alleged only that trial counsel was ineffective for failing to argue that the overhear authorization was improperly

8

conducted. Initially, the court granted the defendant's motion. However, after the State filed a motion to reconsider, the court reversed its ruling.

¶ 38 The court sentenced the defendant, *in absentia*,[1] to four concurrent terms of 12 years' imprisonment. The defendant appeals.

¶ 39         II. ANALYSIS

¶ 40       A. Ineffective Assistance of Counsel

¶ 41 The defendant argues he received ineffective assistance of trial and posttrial counsel. To prevail on a claim of ineffective assistance of counsel, "the defendant must demonstrate that counsel's performance was objectively unreasonable under prevailing professional norms and that there is a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *People v. Petrenko*, 237 Ill. 2d 490, 496-97 (2010) (quoting *Strickland v. Washington*, 466 U.S. 668, 694 (1984)). We review *de novo* claims of ineffective assistance of counsel. *People v. Coleman*, 2015 IL App (4th) 131045, ¶ 66.

¶ 42         1. Motion to Suppress

¶ 43 The defendant first argues that trial counsel was ineffective for failing to argue there was no reasonable cause to support the overhear exemption. We need not determine whether trial counsel's performance was deficient for failing to make this argument because the defendant cannot demonstrate prejudice. See *People v. Givens*, 237 Ill. 2d 311, 331 (2010) (where a defendant has not established prejudice, a reviewing court need not consider whether counsel's performance was deficient). In the context of a motion to suppress, the defendant must be able to

---

[1]The Department of Corrections (DOC) website indicates that the defendant was taken into custody in June 2019. See *People v. Sanchez*, 404 Ill. App. 3d 15, 17 (2010) (appellate court may take judicial notice of the public records of the DOC).

show that but for counsel's deficient performance, the court would have granted his motion to suppress. See *People v. Brickhouse*, 2018 IL App (3d) 150807, ¶ 48.

¶ 44 Generally, eavesdropping is a felony offense. 720 ILCS 5/14-2(a)(2) (West 2016). The restriction on the use of an eavesdropping device is purely statutory and does not implicate the fourth amendment to the United States Constitution (U.S. Const., amend. IV). *People v. Calgaro*, 348 Ill. App. 3d 297, 301 (2004). Section 14-2(a) of the Criminal Code of 2012 (Code) permits a police officer to use an overhear device,

> "[w]ith prior request to and written or verbal approval of the State's Attorney of the county in which the conversation is anticipated to occur ***. The State's Attorney may grant this approval only after determining that reasonable cause exists to believe that inculpatory conversations concerning a qualified offense will occur with a specified individual or individuals within a designated period of time." 720 ILCS 5/14-3(q)(1) (West 2016).

"Reasonable cause," as used in the Code, has been held to be synonymous with "probable cause." *People v. White*, 209 Ill. App. 3d 844, 876 (1991). Reasonable cause "is established when the totality of facts and circumstances existing at the time are sufficient to warrant the belief by a man of reasonable conscience that an offense has been, is being or will be committed." *Id.* Unlike applications for search warrants, courts are not to be "unduly technical" in determining whether reasonable cause exists. *Id.* at 877. "Only a probability of criminal activity need be shown." *Id.*

¶ 45 Here, the defendant cannot show prejudice as the record establishes that both overhear applications provided reasonable cause to believe that inculpatory conversations concerning a narcotics purchase would occur on May 31, and June 6, 2016. The application for the May 31,

2016, overhear reported that Potter knew the defendant and had purchased crack cocaine from the defendant twice within the preceding five months. Potter was also present when the defendant sold crack cocaine to other individuals approximately six times. Peed also observed Potter send text messages to the defendant to set up the May 31, 2016, controlled buy. The June 2, 2016, overhear request included the same details and the statement that Potter had participated in a controlled buy that netted approximately .45 grams of crack cocaine from the defendant. The totality of these facts would readily permit a person of reasonable conscience to believe that an unlawful delivery was set to occur. While neither application included details to establish Potter's reliability as a first-time informant, a showing of reliability was not required to establish reasonable cause. *People v. Sylvester*, 86 Ill. App. 3d 186, 195-96 (1980).

¶ 46        Additionally, even if counsel could establish that the overhear exemption was unsupported by reasonable cause, our supreme court's recent decision in *People v. Davis*, 2021 IL 126435, ¶¶ 19-20, establishes that only the audio recording would be illegal and subject to suppression. The testimony from Reed, Kijanowski, Peed, Hamilton, and Potter regarding the two controlled buys would remain admissible as the fruit of the poisonous tree doctrine does not apply to illegal overhears. *Id.* ¶ 41. This consistent evidence was more than sufficient to establish the defendant's guilt without the recording. Therefore, the defendant cannot demonstrate that he was prejudiced by trial counsel's failure to argue that the overhear exemptions were unsupported by reasonable cause.

¶ 47                                    2. Prior Bad Acts Evidence

¶ 48        The defendant argues that trial counsel provided ineffective assistance when counsel failed to object to evidence of the defendant's prior bad acts and elicited prior bad acts testimony from Peed. Generally, evidence of a defendant's prior bad acts is inadmissible because it has

11

" 'too much' probative value" and might cause the jury to convict a defendant because he is a bad person deserving of punishment. *People v. Donoho*, 204 Ill. 2d 159, 170 (2003) (quoting *People v. Manning*, 182 Ill. 2d 193, 213 (1998)); Ill. R. Evid. 404(b) (eff. Jan. 1, 2011).

¶ 49 This argument also fails because the defendant cannot demonstrate that he suffered prejudice. Setting aside the prior bad acts evidence, the trial evidence readily established that the defendant twice delivered less than 1 gram of crack cocaine to Potter while within 1000 feet of a school, church, and public housing. See 720 ILCS 570/407(b)(2), 401(d)(i) (West 2016). Several officers and Potter testified that Potter set up a controlled buy with the defendant on May 31, 2016. Officers drove Potter to the prearranged location, where Potter exchanged prerecorded bills that the officers had provided for approximately half a gram of cocaine. Kijanowski testified that he saw this hand-to-hand transaction occur. On June 2, 2016, officers conducted a second controlled buy that Potter arranged. Potter again met with the defendant and exchanged prerecorded bills for crack cocaine. Hamilton testified that he observed this hand-to-hand transaction. Both controlled buys were recorded, and the recordings largely confirmed the witnesses' testimony. Testimony from Peed and Hamilton established that the two controlled buys occurred, respectively, within 1000 feet of a school and church, and within 1000 feet of a school and public housing. This evidence was so conclusive that the exclusion of the generic references to the defendant's prior interactions with the police would not have changed the outcome of the trial.

¶ 50                                      3. Cumulative Prejudice

¶ 51 The defendant argues counsel's deficient performance cumulatively prejudiced him because the overhear evidence and prior bad acts evidence bolstered Potter's impeached testimony. However, the combined impact of these alleged deficiencies caused the defendant

12

minimal prejudice. As previously discussed, the trial evidence establishing the defendant's guilt consisted of more than Potter's testimony. Officers conducting surveillance observed both transactions occur, and, after the buys, other officers received the crack cocaine that Potter purchased from the defendant. The officers' testimony further established the distance of the buy locations from the schools, church, and public housing. This evidence would not have been excluded even if counsel had prevailed on the motion to suppress (*supra* ¶ 45) and it readily established the defendant's guilt such that the exclusion of the prior bad acts evidence was unlikely to change the outcome of the trial.

¶ 52                                   4. Posttrial Counsel

¶ 53        The defendant argues that posttrial counsel provided ineffective assistance in failing to raise the above issues in the motion for a new trial. As we have found that trial counsel was not ineffective, posttrial counsel is not ineffective for failing to raise these meritless claims. See *People v. Childress*, 191 Ill. 2d 168, 175 (2000).

¶ 54                                   B. One-Act, One-Crime

¶ 55        The defendant argues two of his convictions violate the one-act, one-crime rule because they derive from the same physical act. The defendant acknowledges that he forfeited review of this issue but contends that it is subject to reversal under the second prong of the plain error doctrine. The State concedes that two of the defendant's convictions must be reversed under the one-act, one-crime rule because counts I and II derive from a single narcotics delivery on May 31, 2016, and counts IV and V derive from a single narcotics delivery on June 3, 2016.

¶ 56        As acknowledged by the defendant, neither trial nor posttrial counsel preserved this one-act, one-crime issue for appellate review by raising it in a posttrial motion. *People v. Enoch*, 122 Ill. 2d 176, 186 (1988). However, a one-act, one-crime violation is a reversible plain error

13

because the error affects the defendant's substantial rights. *People v. Harvey*, 211 Ill. 2d 368, 389 (2004).

¶ 57 A defendant may not be convicted of multiple offenses that are based on precisely the same physical act. *People v. King*, 66 Ill. 2d 551, 566 (1977). Where multiple convictions derive from a single physical act, a court should impose a sentence on the more serious offense and vacate the less serious offense. *People v. Artis*, 232 Ill. 2d 156, 170 (2009).

¶ 58 Here, the defendant's four convictions derive from two physical acts—the May 31, 2016, narcotics delivery and the June 3, 2016, narcotics delivery. Accordingly, two of the defendant's convictions violate the one-act, one-crime, rule, and this otherwise forfeited error is subject to reversal under the second prong of the plain error doctrine. See *Harvey*, 211 Ill. 2d at 389. As we are unable to discern which two of the defendant's four convictions are less serious, all four convictions are Class 1 felonies, we remand the cause with directions for the circuit court to vacate the two less serious offenses. See 720 ILCS 570/407(b)(2) (West 2016).

¶ 59                                    III. CONCLUSION

¶ 60 The judgment of the circuit court of Henry County is affirmed in part and remanded with directions.

¶ 61 Affirmed in part and remanded with directions