2021 IL 126435

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

---

(Docket No. 126435)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v.
LAVAIL D. DAVIS, Appellant.

*Opinion filed October 21, 2021.*

JUSTICE MICHAEL J. BURKE delivered the judgment of the court, with opinion.

Chief Justice Anne M. Burke and Justices Garman, Theis, Overstreet, and Carter concurred in the judgment and opinion.

Justice Neville dissented, with opinion.

**OPINION**

¶ 1     Defendant, Lavail D. Davis, was charged in the circuit court of Kankakee County with unlawful delivery of a controlled substance. 720 ILCS 570/401(d) (West 2018). Defendant filed a motion to suppress evidence, which the circuit court

granted. The State then filed a certificate of impairment pursuant to Illinois Supreme Court Rule 604(a) (eff. July 1, 2017) and appealed the circuit court's order. The Appellate Court, Third District, with one justice dissenting, reversed the circuit court's order granting defendant's motion to suppress and remanded the case to the circuit court. 2020 IL App (3d) 190272. This court subsequently allowed defendant's petition for leave to appeal. Ill. S. Ct. R. 315(a) (eff. Oct. 1, 2019).

¶ 2                                  BACKGROUND

¶ 3         Pursuant to section 14-3(q) of the Criminal Code of 2012 (Code) (720 ILCS 5/14-3(q) (West 2018)), the Kankakee County State's Attorney authorized the Kankakee Area Metropolitan Enforcement Group to secretly record a controlled drug purchase between a confidential informant and another individual. Defendant was not named as the person to be recorded. As a part of that investigation, the informant stood outside the target's home while wearing a recording device that recorded both audio and video. When the informant went to the target's home, he could not locate him. The informant then walked to the porch of a different home and conducted a drug transaction with defendant, which was recorded with the audio and video recording device hidden on the confidential informant. That transaction gave rise to the charges against defendant.

¶ 4         Defendant filed a motion to suppress the audio and video recorded conversation pursuant to section 14-5 of the Code (*id.* § 14-5), arguing that he was not the named subject of the eavesdropping exemption application, so that the recording of the transaction constituted illegal eavesdropping. At the hearing on defendant's motion to suppress, the parties agreed that the audio portion of the recording of the drug transaction violated the eavesdropping statute because the audio recording did not fall within the scope of the authorized overhear. Defendant argued that the video recording and any testimony from the confidential informant concerning the transaction also should be suppressed as illegally obtained evidence under section 14-5.

¶ 5         Following the hearing, the circuit court granted defendant's motion to suppress. The circuit court found that there was an illegal overhear conversation between defendant and the confidential informant that took place before the drugs were seen in the video. Because the illegal overhear conversation preceded the appearance of

- 2 -

any drugs in the video, the circuit court found that the video recording was fruit of the poisonous tree and therefore must be suppressed. In addition, the confidential informant could not testify concerning the drug transaction because the drug transaction occurred after the illegal overhear conversation, so that the confidential informant's testimony also was fruit of the poisonous tree. The circuit court therefore suppressed both the audio and video recording, as well as any testimony concerning the transaction between the confidential informant and defendant.

¶ 6        The circuit court subsequently denied the State's motion to reconsider. The circuit court again stressed that there was a primary illegality—the audio recording of defendant—that was not authorized by the Code. The circuit court stated that, given the primary illegality, the issue was whether the video and testimonial evidence came at the exploitation of the primary illegality or was sufficiently distinguishable to be purged of the primary taint. The circuit court reaffirmed that the video recording and the testimony of the confidential informant came at the exploitation of the primary illegality. The circuit court also held that the evidence was not purged of the primary taint.

¶ 7        On appeal, the appellate court majority first noted that the parties again agreed that the audio portion of the recording constituted illegal eavesdropping and should be suppressed because the audio recording did not fall within the scope of the overhear authorization. 2020 IL App (3d) 190272, ¶ 10. The appellate court then agreed with the State that the suppression did not extend to the video portion of the recording or the confidential informant's personal knowledge of the drug transaction. *Id.* ¶ 13. The appellate court held that the video recording did not derive from eavesdropping activity. *Id.* ¶ 16. Rather, the video recording was made at the same time as the audio recording, so that the video was independent of the audio recording. *Id.* In addition, because the informant was a party to the conversation, he did not eavesdrop. *Id.* Consequently, the video recording and the informant's testimony were both admissible. *Id.*

¶ 8        Presiding Justice Lytton dissented, noting that the eavesdropping statute expressly adopted the fruit of the poisonous tree doctrine in providing that any evidence obtained in violation of the statute is not admissible in any civil or criminal trial. *Id.* ¶ 22, (Lytton, P.J., dissenting). The dissent explained that the fruit of the poisonous tree doctrine holds that an unlawful search taints not only the

evidence obtained from the unlawful search but also evidence derivative of the search. *Id.*

¶ 9 The dissent acknowledged that the exclusionary rule does not extend to evidence obtained from an independent source and that the independent source doctrine allows the admission of evidence discovered by means wholly independent of unlawful activity. *Id.* ¶¶ 23, 25. The dissent, however, disagreed with the majority that the video portion of the drug transaction and the confidential informant's testimony in this case were "independent sources" of evidence. *Id.* ¶ 30. The dissent would find that the video portion of the recording was a part of, and was not separate from, the illegal recording. *Id.* Likewise, testimony from the confidential informant was not "separate from the illegal recording because the informant was responsible for the illegal recording and would not have engaged in any conversation with defendant but for the presence of the recording equipment." *Id.* For those reasons, the dissent would find the video portion of the recording and the confidential informant's testimony to be tainted by the illegal activity and, therefore, inadmissible.

¶ 10 ANALYSIS

¶ 11 On appeal, defendant asks this court to reverse the appellate court and reinstate the trial court's order granting defendant's motion to suppress the video portion of the drug transaction, as well as the confidential informant's testimony. As in the lower courts, the parties agree that the audio recording of defendant's transaction with the confidential informant violated the eavesdropping statute and was not admissible under section 14-5 of the Code.

¶ 12 When reviewing a circuit court's ruling on a motion to suppress, a reviewing court gives great deference to the circuit court's factual findings and will reverse those findings only if they are against the manifest weight of the evidence. *People v. Luedemann*, 222 Ill. 2d 530, 542 (2006). However, a circuit court's ultimate legal ruling on whether suppression is warranted is subject to *de novo* review. *Id.* Because the issue in this case concerns the circuit court's ultimate ruling on whether suppression was warranted, our review is *de novo*.

- 4 -

¶ 13    The offense of eavesdropping is set forth in article 14 of the Code (720 ILCS 5/art. XIV (West 2018)), which is referred to as the eavesdropping statute. The eavesdropping statute provides, in pertinent part, that:

> "(a) A person commits eavesdropping when he or she knowingly and intentionally:
>
> \*\*\*
>
> (2) Uses an eavesdropping device, in a surreptitious manner, for the purpose of transmitting or recording all or any part of any private conversation to which he or she is a party unless he or she does so with the consent of all other parties to the private conversation." *Id.* § 14-2(a)(2).

An eavesdropping device is defined as "any device capable of being used to hear or record oral conversation or intercept, or transcribe electronic communications whether such conversation or electronic communication is conducted in person, by telephone, or by any other means." *Id.* § 14-1(a).

¶ 14    Section 14-3(g) provides for exemptions from the eavesdropping statute, including an exemption for law enforcement officers investigating certain crimes, such as delivery of a controlled substance. *Id.* § 14-3(g). In addition, where "reasonable cause exists to believe that inculpatory conversations concerning a qualified offense will occur with a specified individual or individuals within a designated period of time," the eavesdropping statute exempts law enforcement officers who first obtain authorization to record from the state's attorney. *Id.* § 14-3(q)(1). In order to invoke that exemption, a law enforcement officer must make a written or verbal request to the state's attorney, setting forth whatever information the state's attorney deems necessary to support the officer's belief that a specified individual will commit a qualifying crime. *Id.* § 14-3(q)(2). Included in that information is information about each specified individual whom the officer believes will commit a qualified offense, including the individual's full or partial name, nickname, or alias; a physical description; or any other supporting information known to the officer at the time of the request. *Id.*

¶ 15 Violations of the eavesdropping statute are addressed in section 14-5. Section 14-5 of the eavesdropping statute provides that "[a]ny evidence obtained in violation of this Article is not admissible in any civil or criminal trial." *Id.* § 14-5.

¶ 16 In this court, defendant first argues that, pursuant to the plain language of section 14-5, the video recording and the confidential informant's testimony must be suppressed. Defendant contends that the phrase "any evidence" in section 14-5 encompasses all evidence derived from a violation of the eavesdropping statute. According to defendant, had the legislature intended to limit the scope of inadmissible information to audio recordings, section 14-5 would have used the words "recording" or "interception" rather than "any evidence," because audio recordings are described as "recordings" or "interceptions" throughout the statute. Defendant maintains that the use of "any evidence" demonstrates that, in the event the eavesdropping law is violated, more than just the audio recording or interception must be suppressed at trial.

¶ 17 In considering issues of statutory interpretation, this court's primary goal is to determine and give effect to the legislature's intent. *People ex rel. Glasgow v. Carlson*, 2016 IL 120544, ¶ 17. The most reliable indicator of legislative intent is the statutory language itself, given its plain and ordinary meaning whenever possible. *Id.* A reviewing court should not read into a statute exceptions, conditions, or limitations not expressed by the legislature but instead must enforce clear and unambiguous statutory provisions as written. *Id.*

¶ 18 Section 14-5 bars the admission of "any evidence *obtained in violation of this Article*." (Emphasis added.) 720 ILCS 5/14-5 (West 2018). "This Article" is article 14 of the Code, the eavesdropping statute. Under the plain language of section 14-5, then, "any evidence" is evidence obtained in violation of the eavesdropping statute. For purposes of this case, the eavesdropping statute is violated when a person "[u]ses an eavesdropping device, in a surreptitious manner, for the purpose of transmitting or recording all or any part of a private conversation to which he or she is a party." *Id.* § 14-2(a)(2). An eavesdropping device is "any device capable of being used to hear or record *oral conversation* or intercept." (Emphasis added.) *Id.* § 14-1(a).

¶ 19 Here, the State argues, and we agree, that neither the confidential informant's testimony nor the video recording was obtained in violation of the plain language

of the eavesdropping statute. The confidential informant's testimony, concerning a conversation in which he was a participant, did not constitute eavesdropping as that offense is defined in the statute. It follows that the testimony was not evidence obtained in violation of the plain language of the eavesdropping statute.

¶ 20        Likewise, the video recording, without the audio, was not obtained using a device to surreptitiously hear or record an *oral* conversation. As the State observes, without the audio, the video recorded only defendant's actions during his interaction with the confidential informant. In fact, defendant conceded in the appellate court that the video recording would have been admissible if it had been made without audio. 2020 IL App (3d) 190272, ¶ 13 n.1. The silent video recording, then, was not evidence obtained in violation of the plain language of the eavesdropping statute.

¶ 21        Having found that neither the video recording nor the testimonial evidence must be suppressed pursuant to the plain language of section 14-5, we now turn to the gravamen of this case: whether the video recording and the confidential informant's testimony should nonetheless be suppressed pursuant to the "fruit of the poisonous tree doctrine." Defendant contends that the illegally recorded audio conversation led to the appearance of drugs in the video, as well as the confidential informant's testimony regarding the drug transaction with defendant. Defendant claims there was no attenuation from the illegal audio recording that would purge the video recording and the testimony from the primary taint, so that the evidence was fruit of the poisonous tree and must be suppressed.

¶ 22        In the appellate court, the majority rejected this argument, holding that the video recording and the confidential informant's testimony were admissible because the video recording and the testimony were independent of the illegal audio recording. *Id.* ¶ 13. Because the video and testimonial evidence did not derive from the illegal eavesdropping, the majority stated that it need not consider the application of the fruit of the poisonous tree doctrine. The majority cited this court's decision in *People v. Gervasi*, 89 Ill. 2d 522 (1982), in support of its holding. 2020 IL App (3d) 190272, ¶ 14. The dissent believed the *Gervasi* decision was distinguishable from this case and would suppress the video recording and the confidential informant's testimony as fruit of the poisonous tree. *Id.* ¶¶ 32-34 (Lytton, P.J., dissenting).

¶ 23     In *Gervasi*, a police officer believed defendant Gervasi was going to offer him a bribe to help one of Gervasi's clients. 89 Ill. 2d at 524. The officer devised a plan to monitor his conversations with Gervasi. *Id.* Accordingly, telephone conversations between the officer and defendant Gervasi were overheard and transcribed by a court reporter listening to the conversations on an extension telephone with the speaking element removed. *Id.* Several conversations between the officer and the other defendants were recorded in the same manner, as were conversations that Gervasi had with another officer and an assistant state's attorney. *Id.* at 525. In addition, in-person conversations between the officers and the defendants were overheard and transcribed by court reporters without the use of listening devices. *Id.* Based upon that evidence, the defendants were charged with bribery, solicitation, and conspiracy. The defendants moved to suppress the evidence pursuant to section 14-5 of the eavesdropping statute. *Id.* at 523-24.

¶ 24     The trial court suppressed all the transcripts of the overheard conversations, as well as all testimony relating to those conversations, finding that an eavesdropping device had been used to transcribe the telephone conversations and that the state's attorney's office had not received judicial approval for the eavesdropping. *Id.* at 525. The appellate court affirmed in part and remanded for a hearing on whether the trial court properly suppressed the testimony and transcripts of the overheard in-person conversations. *Id.* at 525-26.

¶ 25     This court granted the State's petition for leave to appeal. This court first held that an extension telephone with the speaking element removed from the mouthpiece was an eavesdropping device as defined in section 14-1(a) of the eavesdropping statute. *Id.* at 526-27. This court agreed that both the testimony of the court reporters concerning the telephone conversations and the transcripts of what the court reporters had heard by use of the altered telephone extensions were properly suppressed. *Id.* at 527.

¶ 26     The *Gervasi* court then considered whether the appellate court correctly held that the testimony of the participants in the various conversations should be suppressed as fruit of the poisonous tree. *Id.* at 527-28. *Gervasi* noted that the test of whether evidence is fruit of the poisonous tree was best stated in *Wong Sun v. United States*, 371 U.S. 471 (1963). *Gervasi*, 89 Ill. 2d at 528. The *Wong Sun* Court explained:

"We need not hold that all evidence is 'fruit of the poisonous tree' simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is 'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.' Maguire, Evidence of Guilt, 221 (1959)." *Wong Sun*, 371 U.S. at 487-88.

*Gervasi* also noted that, in *People v. Maslowsky*, 34 Ill. 2d 456 (1966), this court held that the legislature expressly included the "fruit of the poisonous tree" doctrine in the eavesdropping statute. *Gervasi*, 89 Ill. 2d at 528.

¶ 27    The *Gervasi* court held that the testimony of the participants in the various conversations was not fruit of the poisonous tree. *Id.* at 529. The court noted that the basic assumption underlying the "fruit of the poisonous tree" doctrine is that the challenged evidence is derived from the violation of a statutory or constitutional right. *Id.* at 528. Because the officers' knowledge was not derived from the court reporters' illegal eavesdropping activities, the doctrine did not apply. *Id.* at 529. The court explained:

"The officers' knowledge of and [their] testimony concerning the contents of the phone conversations in our case were completely independent of the illegal eavesdropping. Therefore, there is no indication that the testimony of these officers was in any way induced or influenced by the eavesdropping. Here the officers were the actual participants in the conversations. Their knowledge of what was said was not derived from any illegal action. They spoke directly with the defendants, and most of the conversations were initiated by the defendants and none of them were the result of illegal eavesdropping. The officers were the participants in the conversations and were not the eavesdroppers." *Id.* at 530.

Accordingly, the *Gervasi* court held that the testimony of the officers concerning the telephone conversations should not have been suppressed. *Id.* at 531.

¶ 28    In this case, the majority and dissent disagreed over the basis for the *Gervasi* court's decision. According to the majority, *Gervasi* held the officers' testimony was admissible because the officers were parties to the conversations with the

- 9 -

defendants. 2020 IL App (3d) 190272, ¶ 15. Because the officers were parties to the conversations, the officers' knowledge of the conversations did not derive from the illegal eavesdropping. *Id.* Here too, the confidential informant was a party to the conversation with defendant, so his knowledge of that conversation did not derive from illegal eavesdropping. *Id.* ¶ 16. The confidential informant's testimony therefore was admissible under *Gervasi*. *Id.* The majority also held that the video recording did not derive from the illegal eavesdropping activity because the video was made at the same time as the audio recording. *Id.* Therefore, the video also was independent of the audio recording and was admissible at trial. *Id.*

¶ 29        The dissent argued that *Gervasi* was distinguishable. *Id.* ¶ 32 (Lytton, P.J., dissenting). According to the dissent, the basis for the *Gervasi* court's holding was the fact that the officers did not surreptitiously obtain information from defendants. *Id.* ¶ 33. Because the officers' knowledge of the conversations with the defendants was not derived from the court reporters' illegal eavesdropping activities, the officers' testimony did not violate the eavesdropping statute. *Id.*

¶ 30        The dissent stated that, in contrast to the officers in *Gervasi*, the confidential informant in this case surreptitiously recorded defendant. *Id.* ¶ 34. The dissent reasoned:

> "Here the conversation between the CI [(confidential informant)] and defendant was a direct result of illegal recording. If the CI had not been equipped with the recording equipment, he would not have attempted to engage in a drug transaction with defendant. Unlike the conversations the police officers testified to in *Gervasi*, which were motivated independently of and with no connection to the eavesdropping, the CI's contact with defendant was motivated entirely by the illegal recording equipment. Thus, any and all evidence obtained therefrom, including video of the transaction and the CI's testimony about his transaction with defendant, should be suppressed." *Id.*

¶ 31        The disagreement over the proper interpretation of *Gervasi* continued in a decision from a different panel of the Appellate Court, Third District, filed approximately two months after the decision in this case. See *People v. Harris*, 2020 IL App (3d) 190504. As in this case, the issue in *Harris* was whether the trial court properly suppressed a confidential informant's testimony and video recordings of a controlled substance purchase, where the parties agreed that the

audio recording of the transaction should be suppressed. Presiding Justice Lytton, the dissenting justice, authored the majority opinion in *Harris* and reached the opposite result. The *Harris* majority held that the video recording and the confidential informant's testimony should be suppressed. *Harris* reasoned that

> "the illegal recording led directly to the evidence the State seeks to use against defendant. The video portion of the recording and testimony from the confidential informant were part of the illegal recording, not 'independent sources' of evidence that could be 'purged of the primary [illegal] taint.' *** Thus, the presence of the illegal recording device led to the conversation and transaction between the informant and defendant; therefore, testimony about the conversation and video of the transaction are inadmissible." *Id.* ¶ 27.

¶ 32    The *Harris* majority distinguished *Gervasi* on the ground that the officers in *Gervasi* did not surreptitiously obtain information from the defendants, while the confidential informant in the case before it secretly recorded the defendant. *Id.* ¶ 30. In addition, the conversations the officers in *Gervasi* testified to were motivated independently of the illegal eavesdropping, while the confidential informant's contact with the defendant was motivated by the illegal recording equipment. *Id.*

¶ 33    Justice Holdridge dissented. *Id.* ¶¶ 37-52 (Holdridge, J., dissenting). The *Harris* dissent disagreed with the majority's attempts to distinguish *Gervasi*, noting that, although the officers in *Gervasi* did not wear recording devices, they were aware of the presence of the court reporters and planned for the court reporters to be present to overhear and transcribe the conversations. *Id.* ¶ 45. Like the *Harris* confidential informant, the officers in *Gervasi* knew that their conversations with defendant were being recorded and had arranged for that to happen. *Id.* The dissent would find that the confidential informant's knowledge of the conversation with the defendant derived from her actual participation in that conversation, not from the illegal audio recording. *Id.* ¶ 47. Likewise, the dissent would find that the video recording was not subject to suppression as fruit of the poisonous tree because the video was not obtained by exploiting the illegal audio recording. *Id.* ¶ 48.

¶ 34    The dissent also disagreed with the majority that the independent source doctrine applied to the case. *Id.* ¶ 50. The dissent noted that, under the fruit of the poisonous tree doctrine, it is only necessary to show that the challenged evidence derives from an independent source if the primary illegality has been established.

*Id.* The dissent pointed out that, under *Gervasi*, there is no primary illegality to be exploited if the witness is an actual participant in a conversation, so that there is no need to consider whether that evidence derived from an independent source. *Id.* ¶ 51.

¶ 35 Although not well developed, defendant's argument concerning the fruit of the poisonous tree doctrine generally echoes the *Harris* majority opinion, without directly citing, referencing, or analyzing *Harris*. Defendant argues that the appellate court in this case misapplied *Gervasi*. Defendant contends that the following factors were sufficient to establish attenuation in *Gervasi*: the officers had previous conversations with the defendants, the officers had prior knowledge of the investigation, and the officers had knowledge of the identity of defendants prior to the eavesdropping. Defendant claims that those factors distinguish the police officers' testimony in *Gervasi* from the testimony of the confidential informant in this case.

¶ 36 Defendant analogizes the confidential informant's testimony and the video recording in this case to the court reporters' testimony and the transcripts in *Gervasi*. Defendant points to the fact that both the confidential informant here and the *Gervasi* court reporters used illegal recording devices, while the officers in *Gervasi* did not. Moreover, in contrast to the officers in *Gervasi*, the confidential informant in this case had no prior knowledge of whether defendant had been selling drugs or conducting illegal activity before he eavesdropped on defendant.

¶ 37 In response, the State argues that the *Harris* majority, defendant, and the dissenting justice in this case have misapprehended the basis for *Gervasi*'s holding. The State maintains that *Gervasi* premised admissibility on how the proposed witness came by his or her knowledge of the evidence. Because the court reporters knew of the content of the conversations between defendant and the officers solely as a result of the eavesdropping device, the court reporters' testimony was barred. In contrast, the officers' knowledge of the conversation with the defendant resulted from the officers' direct participation in the conversation, even though the officers were also participants in the eavesdropping plan.

¶ 38 We agree with the State. The *Harris* majority reasoned that the officers in *Gervasi* were motivated independently of the illegal eavesdropping because they were not wearing recording devices. *Harris*, 2020 IL App (3d) 190504, ¶ 30. In

contrast, the *Harris* confidential informant was motivated by the illegal recording equipment because she was wearing a recording device. *Id.*

¶ 39 This distinction cannot withstand scrutiny. As the *Harris* dissent observed, although the officers in *Gervasi* did not wear the recording devices, it was the officers who came up with the plan for the court reporters to overhear and transcribe the officers' conversations with the defendants. *Id.* ¶ 45 (Holdridge, J., dissenting). The officers knew that their conversations with the defendants were being recorded. *Id.* The *Harris* majority was improperly speculating concerning the motives of the various actors. There is no basis to conclude that the *Gervasi* officers were any less motivated by the court reporters' illegal eavesdropping, conducted at their request, than the *Harris* confidential informant was by her recording device.

¶ 40 *Gervasi* clearly stated that the fruit of the poisonous tree doctrine did not apply because the officers were actual participants in the conversations with the defendants. 89 Ill. 2d at 530. The officers' knowledge of what was said was not derived from any illegal action because the officers spoke directly with the defendants. *Id.*

¶ 41 The same reasoning applies here. The confidential informant was a participant in the conversation with defendant, so his knowledge of that conversation was not derived from the illegal audio recording. Likewise, the video recording was made simultaneously with the audio recording and, thus, could not have been derived from the audio recording. Because neither the confidential informant's testimony nor the video recording was obtained as a result of the illegal audio recording, the fruit of the poisonous tree doctrine does not apply. Because the evidence was admissible, the appellate court properly reversed the circuit court's order granting defendant's motion to suppress that evidence. The *Harris* court's decision, reaching a contrary result, is hereby overruled.

¶ 42 CONCLUSION

¶ 43 For all the foregoing reasons, we find that the appellate court properly reversed the circuit court's order granting defendant's motion to suppress the video recording and the testimony of the confidential informant. We therefore affirm the appellate court and remand the cause to the circuit court of Kankakee County for

further proceedings.

¶ 44    Appellate court judgment affirmed.

¶ 45    Circuit court judgment reversed.

¶ 46    Cause remanded.

¶ 47    JUSTICE NEVILLE, dissenting:

¶ 48    The majority finds that (1) the confidential informant's (CI) testimony is admissible because the CI's knowledge of the transaction did not derive from illegal eavesdropping and (2) the video is admissible because the video was independent of the audio recording. *Supra* ¶¶ 28, 41. I agree with the majority that the audio recording violated the statutory language of the eavesdropping statute and is inadmissible pursuant to section 14-5. See 720 ILCS 5/14-2, 14-3, 14-5 (West 2020).

¶ 49    However, I do not think the evidence in the record is sufficient for the court to make findings of fact and conclusions of law about the alleged drug transaction. On February 22, 2019, the trial court held a hearing on Davis's motion to suppress. The State made a proffer, but there was no testimony from a witness who was present at the alleged drug transaction to testify about what occurred. Moreover, the CD provided by the State containing the audio and video recordings of the events that transpired during the alleged drug transaction is indecipherable.

¶ 50    The State's proffer and the indecipherable CD are insufficient for me to make a decision in this case. Therefore, because the evidence in the record is insufficient to answer fact or legal questions, I would remand this case to the trial court for further proceedings. Accordingly, I respectfully dissent.