2026 IL App (2d) 250168-U
No. 2-25-0168
Order filed January 22, 2026

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant,
v. DEMETRI D. BEDIENT, Defendant-Appellee.

Appeal from the Circuit Court of Lake County.
Honorable Patricia S. Fix, Judge, Presiding.
No. 24-CF-1912

JUSTICE HUTCHINSON delivered the judgment of the court.
Justices McLaren and Schostok concurred in the judgment.

**ORDER**

¶ 1   *Held*: Victim's recording of her telephone conversation with defendant did not violate the eavesdropping statute where the victim had reason to believe that defendant would admit on the call that he had abused her. Nonetheless, the recording was inadmissible because (1) defendant's statements on the call were too vague to be probative of the charged crimes and (2) to the extent the statements were indicative of defendant's other acts of abuse, they were inadmissible because the State failed to satisfy the notice requirements for other-acts evidence.

¶ 2   Per Illinois Supreme Court Rule 604(a)(1) (eff. Apr. 15, 2024), the State seeks interlocutory review of an order of the circuit court of Lake County (1) granting defendant's mid-trial oral motion to suppress a recording of a telephone conversation between defendant and the victim and (2) barring the victim from testifying to her personal knowledge of the telephone conversation. The court suppressed the recording based on its conclusion that it was made in violation of the

Illinois eavesdropping statute (720 ILCS 5/14-1 *et seq.* (West 2022)) and that the statute's fear-of-crime exemption (*id.* § 14-3(i)) did not apply. The court, in turn, suppressed the victim's testimony about the conversation as fruit of the poisonous tree, *i.e.*, the recording. We agree with the State that the court erred in suppressing both the recording as violative of the eavesdropping statute and the victim's testimony about the telephone conversation as fruit of the poisonous tree. We nevertheless affirm the suppression because (1) the evidence was not relevant to the charged offenses and (2) even if the evidence was otherwise admissible as evidence of defendant's other acts of domestic violence, the State failed to comply with the statute governing the admission of such evidence (see 725 ILCS 5/115-7.4(c) (West 2022)).

¶ 3                          I. BACKGROUND

¶ 4                          A. The Charges

¶ 5      On October 23, 2024, defendant was indicted on four charges, stemming from events that occurred on July 17, 2024, involving S.M., the mother of defendant's child. Count I, charging criminal sexual assault (720 ILCS 5/11-1.20(a)(1) (West 2022)), alleged that defendant, "by force or threat of force, knowingly committed an act of sexual penetration with *** S.N. [*sic*], in that *** defendant inserted an object, a cucumber, into the sex organ of *** S.N. [*sic*]." Count II, charging aggravated domestic battery (*id.* § 12-3.3(a-5)), alleged that defendant "knowingly strangled *** S.N. [*sic*], a family or household member." Count III, charging domestic battery (enhanced) (*id.* § 12-3.2(a)(1)), alleged that defendant "caused bodily harm to *** S.M., a family or household member ***, in that *** defendant struck *** S.M[.] about the body." Count IV, charging domestic battery (enhanced) (*id.* § 3.2(a)(2)), alleged that "defendant knowingly *** made physical contact of an insulting or provoking nature with *** S.N. [*sic*], a family or household member of *** defendant, in that *** defendant struck *** S.N. [*sic*] about the body."

In addition, counts III and IV each alleged that defendant had previously been convicted of domestic battery in case No. 20-CF-1649.

¶ 6                                    B. The State's Motion *In Limine*

¶ 7      On April 1, 2025, the State filed a motion *in limine* under section 115-7.4 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/115-7.4 (West 2022)), seeking to admit evidence of other acts of domestic violence committed by defendant. According to the State, defendant had the following two prior convictions of domestic battery involving S.M. In Lake County case No. 20-CF-1649, defendant pleaded guilty to domestic battery, based on allegations that, on October 7, 2020, while arguing with S.M. about their child, defendant "slapped S.M. in the face and pushed her to the ground" and "placed both hands around [her] neck and squeezed until [she] lost consciousness." In Walworth County, Wisconsin, case No. 21-CM-504, defendant pleaded guilty to "[d]isorderly [c]onduct with a family member," based on allegations that, on August 10, 2021, while arguing with S.M., he "pushed S.M. up against the wall and placed his hands around [her] neck restricting [her] ability to breath [*sic*]." The State asked that the prior convictions be admitted into evidence and that S.M. be allowed to testify to the underlying conduct.

¶ 8      On April 8, 2025, following a hearing, the trial court ruled as follows. As to case No. 20-CF-1649, the court allowed admission of both the conviction and S.M.'s testimony about the underlying conduct. However, as to case No. 21-CM-504, the court barred admission of the conviction but allowed S.M.'s testimony about the underlying conduct.

¶ 9                                    C. Trial

¶ 10      The matter proceeded to a jury trial on April 21, 2025. However, during *voir dire*, defendant waived his right to a jury trial. Thus, the trial court conducted a bench trial.

¶ 11                                    1. S.M.'s Testimony

¶ 12    S.M. testified that she was 23 years old. She met defendant when she was 16 years old, and they started dating shortly thereafter. S.M. and defendant had a child together; she was born on December 23, 2019, and was five years old. S.M. and defendant's relationship was "really good" when they first started dating. When S.M. got pregnant, she moved in with defendant and his mother. After their daughter was born, S.M., defendant, and their daughter moved into an apartment together. Things "got worse" after they moved in together. Defendant was verbally abusive; he would call S.M. "a dumb b***" and "tell [her] to kill [herself]."

¶ 13    S.M. testified to an incident that occurred on October 7, 2020. Defendant and S.M. got into a verbal fight that escalated into physical abuse. S.M. testified that defendant "pushed" and "hit" her. He hit her with "closed fists" and "non-closed fists." He "threw [her] around the apartment like everywhere possible." Defendant "grabbed [S.M.] by [her] throat and put both hands around [her] throat." The police arrived, and defendant was arrested. S.M. identified three photographs of injuries she sustained to her arms and neck.

¶ 14    After the incident, defendant moved in with his sister in Wisconsin. S.M. continued residing in the apartment but would visit defendant. She described their relationship at that time as "fine" and "okay." After living with his sister for several months, defendant moved into his own apartment in Delavan. He then began treating S.M. the way he had when they previously shared an apartment.

¶ 15    S.M. testified to an incident that occurred on August 10, 2021. S.M. was at defendant's apartment and they began to argue. As S.M. was attempting to leave, defendant "grabbed [her] by [her] throat and hit [her] in [her] face." S.M. was unable to breathe. S.M. called the police. She

suffered a "busted lip" and had "redness around [her] throat." S.M. identified three photographs of her injuries.

¶ 16    S.M. testified that, from 2021 through 2024, she and defendant remained in an "on and off" dating relationship. In 2024, defendant was evicted from his apartment and moved back in with S.M. S.M. testified that, at that point, their relationship was "the worst [she had] ever seen it."

¶ 17    S.M. testified regarding the incidents at issue here. She stated that, on July 17, 2024, she and defendant got into an argument at their apartment. Defendant started hitting her and screaming in her face. He called her names like "dumb b***," "whore," and "slut." He told her she was "a s*** mom." He hit her in the face with a "closed fist." He also hit her on the back of her head, threw objects at her, and pushed, shoved, and choked her. S.M. described how defendant choked her, indicating he "put his hands around [her] throat and squeezed." S.M. testified that she tried to leave the apartment several times, but defendant grabbed her by the hair or throat to prevent her from leaving. S.M. testified that defendant continued this behavior for hours. She testified that she tried to call 911, but defendant prevented her from doing so by grabbing her phone and smashing it. Defendant had a machete in his hand "just to scare [her]." S.M. identified four photographs of injuries she suffered because of defendant's abuse. The photos showed bruising to her face and arms, redness around her throat, and a cut on her leg.

¶ 18    S.M. testified further that, at one point, defendant "pulled out a cucumber and said that he was going to use it on [her]." S.M. was "in shock" and thought that defendant was kidding. S.M. realized that defendant was serious when she saw "a blank stare on his face." She testified that she saw that look on his face "[a]nytime he would hit [her] or hurt [her]." S.M. went to the bedroom and let defendant insert the cucumber into her vagina because she "was just tired of fighting." She testified: "I had so much trauma from that day being strangled, from being hit in my face, punched

- 5 -

for hours, I kind of just—like my body was like giving up at that point, like I was in like survival mode."

¶ 19 S.M. testified that she did not report the incident to the police until about a month later. When asked why she eventually called the police, she stated: "After five years of being abused and then him calling me and just like being like proud of hurting me, I was just fed up and I wanted to do something about it because he got away with it so many times." S.M. provided a handwritten statement to the police, which she identified at trial.

¶ 20 S.M. testified that, on August 16, 2024, before contacting the police, she had a telephone conversation with defendant. The conversation was on "speaker phone" and she had asked "Patrick" (her boss), who was standing next to her, to record it. When asked why she had asked Patrick to record the phone conversation, she stated: "Because I was hoping I could get [defendant] to admit or say something admitting that he hit me." During the conversation, S.M. asked defendant questions about hitting her.

¶ 21 2. Defendant's Oral Motion to Suppress the Recording

¶ 22 At this point, defense counsel objected on the basis that defendant did not know that the phone call was being recorded. Counsel made an oral motion to suppress the recording as violative of the Illinois eavesdropping statute (see 720 ILCS 5/14-2(a)(2), (a)(5) (West 2022)). The State responded that the recording of the telephone call was admissible under the fear-of-crime exemption to the eavesdropping statute (see *id.* § 14-3(i)). Before ruling, the trial court reviewed a transcript of the recording and listened to the actual recording. The written transcript reads as follows:

> "[S.M.:] What you said?
>
> [Defendant:] Saying crazy s***.

[S.M.:] Because that's what you said, bro.

[Defendant:] Why you always saying

[S.M.:] You said you have a key to my apartment.

[Defendant:] Any recordings of that? Well, I would love to hear this.

[S.M.:] You said you have f*** a key to my apartment. Right?

[Defendant:] I would love to hear this. I would love to hear this.

[S.M.:] It's really sad how you act, bro.

[Defendant:] Don't worry. What's sad how you act sweetheart. You're the one that brought up people and I kind just s*** first. Nobody brought nothing. Nothing. I'm trying to see.

[S.M.:] You don't care about seeing her 'cause you wouldn't be texting me all this dumb ass s***.

[Defendant:] When I, when I, when I get full custody of her. You're gonna see how much I care about her

[S.M.:] You think you're gonna have custody when you beat me up?

[Defendant:] [S.M.]? They, the courts don't care about our relationship. They care about the relationship between

[S.M.:] They do, they do. It's the fact that you hit me, bro.

[Defendant:] We're not married. You dumb bitch. That's what you're not getting. They know. They know people don't always work out. They know that. They've dealt with this f*** situation times and times before. You sound stupid.

[S.M.:] You literally cracked my jaw.

[Defendant:] Male has still got the mother***, what's that called

[S.M.]: That's why you don't even know what you're saying.

[Defendant]: What do you mean?

[S.M.:] You're f*** retarded

[Defendant:] Got partial custody and s***. Today. You're retarded. You can't even f*** you being finished f*** school without help. You sound real dumb

[S.M.:] Boy. You don't even have a diploma. Shut the f*** up.

[Defendant:] You sound real dumb. You sound real dumb

[S.M.:] You literally cracked my jaw. You literally cracked my jaw. How do you live with yourself knowing you beat the mother of your child

[Defendant:] Bitch. And guess what? I've never laid a hand other than you. Every other one can just love me. You suck my dick.

[S.M.:] You said you've only laid your hands on me.

[Defendant:] Only on you in the past. Hell yeah."

¶ 23                    3. The Trial Court's Ruling

¶ 24    The trial court granted defendant's motion to suppress the recording. The court first noted that, under the eavesdropping statute, a person commits the offense of eavesdropping when she records a private conversation without the consent of all parties involved. *Id.* § 14-2(a)(1). The court found that defendant intended the conversation to be private. The court next considered whether the fear-of-crime exemption to the eavesdropping statute applied. The court stated:

"Section 14-3(i) of [the eavesdropping statute] provides that the following activity is exempt, and I quote:

'Recording of a conversation made by or at the request of a person not a law enforcement officer or agent of a law enforcement officer,' and in parens I will add that I

- 8 -

will find that this was not a law enforcement officer or an agent of a law enforcement officer because I have not heard any of that in the proffer. '—who is a party to the conversation under reasonable suspicion that another party to the conversation is committing, is about to commit or has committed a criminal offense against the person or a member of his or her immediate household, and there is reason to believe that evidence of the criminal offense may be obtained by the recording.'

The fear of crime exemption to eavesdropping permits unconsented recordings whereas here the person making the recording is party to the conversation, but I also have to find that that individual is under a reasonable suspicion that another party to the conversation is committing, has committed or is about to commit a crime; and, most importantly, and the recording may yield evidence of a criminal offense.

So here, that third subsection, whether or not the recording may yield evidence of a criminal offense is what the [c]ourt is most strictly looking at.

When *** defendant allegedly states at the end of the transcription, 'Bitch. And guess what? I've never laid a hand other than you. Every other one can just love me.' And then also states: 'Only on you in the past. Hell yeah.' That is very, very, very generalized, and is not specific enough for this [c]ourt to believe that it relates to specifically an incident of charged domestic battery as alleged in [c]ounts 3 and 4 on July 17th of 2024, and as such, the defense's objection to preclude, prohibit this recording as a violation of the eavesdropping statute and not applicable as a fear of crime exemption to eavesdropping is granted. The recording is not specific enough in this [c]ourt's view to yield evidence of a criminal offense as charged in this case. So for all of those reasons, defense's motion to suppress said recording is granted."

¶ 25    Following the trial court's ruling, the State asked for clarification as to whether the ruling would also bar S.M. from testifying as to what she heard defendant say. The court asked defense counsel if he had any objection to such testimony. Defense counsel indicated that he did, stating that "[i]t's information that was gained from a phone call that [defendant] didn't know he was being recorded on." The court responded, "So you're asking that it be barred as fruits of the poisonous tree?" Defense counsel agreed. When the court asked the State whether it had a "final word," the State replied, "Nothing, Your Honor." Thereafter, the court ordered that S.M.'s testimony as to the conversation with defendant would also be barred as it was the "fruit of the recording that the [c]ourt found to be inadmissible."

¶ 26    The State filed a certificate of impairment and a timely notice of appeal.

¶ 27                               II. ANALYSIS

¶ 28    The State contends that the trial court erred in granting defendant's oral motion to suppress where the recording of the telephone call between S.M. and defendant was admissible under the fear-of-crime exemption to the eavesdropping statute. According to the State, the court misapplied the exemption by considering whether defendant's statements on the phone call were actually an admission to crime, not whether S.M. had reason to believe, in recording the call, that evidence of a criminal offense might be obtained thereby.

¶ 29    In response, defendant contends that, even if we were to agree with the State that, contrary to the trial court's conclusion, the recording did fall under the fear-of-crime exemption to the eavesdropping statute, suppression was nevertheless warranted because (as noted by the court) the recording was not relevant to the charged offenses. Defendant contends further that, even if the recording met the substantive requirements for admission as evidence of other acts of domestic violence, it would still be inadmissible because the State failed to provide the requisite pretrial

- 10 -

notice of its intent to offer the recording as other-acts evidence (see 725 ILCS 5/115-7.4(c) (West 2022)).

¶ 30                                    A. Standard of Review

¶ 31    We first note that the parties dispute the appropriate standard of review. The State argues for *de novo* review for two reasons: (1) "the ultimate legal question of suppression is reviewed *de novo*" (the State cites *People v. Veal*, 2017 IL App (1st) 150500, ¶ 10) and (2) the issue on appeal is whether the trial court "misapplied" the fear-of-crime exemption to the eavesdropping statute, and "[w]hether a trial court correctly applies a statute is subject to *de novo* review" (the State cites *People v. Bowden*, 313 Ill. App. 3d 666, 668 (2000) ("Because this case presents no questions of fact and our decision turns on the proper interpretation of the statute, we review the trial court's ruling *de novo*.")). Defendant responds that the court's ruling should be reviewed under the manifest weight of the evidence standard. According to defendant, there is no dispute over the elements or scope of the eavesdropping statute; rather, the dispute is whether the State introduced sufficient evidence to establish the applicability of the exemption. Defendant argues that this presents a factual question that should be reviewed under the manifest weight standard. See *People v. Peterson*, 2017 IL 120331, ¶ 39 (applying the manifest weight standard to the trial court's admission of hearsay evidence under the forfeiture-by-wrongdoing doctrine). We need not resolve the issue of the appropriate standard of review, because we would reach the same conclusion under either standard.

¶ 32         B. Whether the Recording is Exempt Under the Eavesdropping Statute

¶ 33    The eavesdropping statute provides that a person commits the offense of eavesdropping when she records a private conversation without the consent of all parties involved. 720 ILCS 5/14-2(a)(2) (West 2022); see *People v. Davis*, 2021 IL 126435, ¶ 13. The statute provides further

- 11 -

that "[a]ny evidence obtained in violation of [the statute] is not admissible in any civil or criminal trial" other than for prosecution under the statute. 720 ILCS 5/14-5 (West 2022); see *Davis*, 2021 IL 126435, ¶¶ 15-19. The parties do not dispute that the recording at issue was of a private conversation and was made without defendant's consent.

¶ 34    Nevertheless, several activities are exempt from the statute. See 720 ILCS 5/14-3(a)-(q) (West 2022). The following exemption—commonly referred to as the fear-of-crime exemption— is at issue here. It provides:

"(i) Recording of a conversation made by or at the request of a person, not a law enforcement officer or agent of a law enforcement officer, who is a party to the conversation, under reasonable suspicion that another party to the conversation is committing, is about to commit, or has committed a criminal offense against the person or a member of his or her immediate household, and there is reason to believe that evidence of the criminal offense may be obtained by the recording[.]" *Id.* § 14-3(i).

The parties do not dispute that (1) S.M. was "not a law enforcement officer or agent of [one]" and (2) the recording was made "under reasonable suspicion" that defendant "has committed a criminal offense against [S.M.]." See *id.* The dispute is whether there was "reason to believe that evidence of the criminal offense may be obtained by the recording." *Id.*

¶ 35    Here, the trial court found that the reason-to-believe element was not met because defendant's comments on the recording—admitting that he had only ever "laid [his] hands" on S.M.—were "very, very, very generalized and *** not specific enough for th[e] [c]ourt to believe that it relate[d] to specifically an incident of charged domestic battery as alleged in [c]ounts [III] and [IV]." The court stated further that "[t]he recording [was] not specific enough *** to yield evidence of a criminal offense as charged in this case." Thus, having concluded that the exemption

- 12 -

did not apply, the court granted defendant's motion to "prohibit [admission of] [the] recording as a violation of the eavesdropping statute." However, while we may agree with the court's implicit conclusion that defendant's statements were too vague to be relevant to the domestic battery charges at issue, the question for purposes of applying the fear-of-crime exemption is not whether the recording *actually* yielded relevant evidence, but whether S.M. had "*reason to believe* that evidence of the criminal offense *may* be obtained by the recording." (Emphasis added.) See *id.*

¶ 36    The State argues that the evidence was sufficient to establish S.M.'s "reason to believe that evidence of the criminal offense may be obtained by the recording." See *id.* The State points to S.M.'s response to its question of why she asked Patrick to record the phone conversation. S.M. testified: "Because I was hoping I could get [defendant] to admit or say something admitting that he hit me." S.M. also testified that, during the conversation, she asked defendant questions about hitting her. The State argues that S.M. was "undoubtedly reasonable" in believing that defendant would admit to some of his long history of abusing her.

¶ 37    Defendant replies that the evidence was insufficient to establish that S.M. had "reason to believe" that defendant would admit to abusing her. Citing *Carroll v. Lynch*, 698 F.3d 561 (7th Cir. 2012), defendant asserts that "reason to believe" is an objective standard. Thus, according to defendant, the State was required to put forth objective evidence to show that a reasonable person would share S.M.'s belief, such as evidence (1) that S.M. knew from prior conversations that defendant often talked about the incident or (2) that defendant had said something earlier in the phone call that prompted S.M. to ask Patrick to begin recording. According to defendant, because S.M. did not present any explanation as to why she believed that the recording might obtain evidence of the offense, the court correctly found that the exemption did not apply.

¶ 38   However, *Carroll* does not support defendant's position. *Carroll* holds that, under the exemption, a party's "*reasonable suspicion* that [another party to the conversation] is committing or may commit a crime against the person requesting the recording or someone in that person's immediate household" must be "objectively reasonable." (Emphasis added.) *Id.* at 566. *Carroll* speaks to the "reasonable suspicion" element, not the reason-to-believe element. Indeed, none of the cases cited by the parties address the reason-to-believe element. See *People v. Nestrock*, 316 Ill. App. 3d 1, 9 (2000) (recording made by two individuals of a phone call with the defendant was not exempt because there was no evidence that the individuals suspected that the defendant intended to commit a crime; thus, there was no reason to address whether any such suspicion would be reasonable); *In re Marriage of Almquist*, 299 Ill. App. 3d 732, 736 (1998) (recording made by a father of a telephone visitation with his minor daughter in an attempt to obtain evidence of the mother's interference with visitation was not exempt under the eavesdropping statute because the father had no reasonable basis to suspect that the only other person on the call—his daughter— was likely to commit a crime during the phone call).

¶ 39   To be sure, the additional testimony suggested by defendant would have been more than sufficient. However, S.M.'s testimony that she thought that defendant might say something about hitting her was enough. This testimony—and the fact that she recorded him—certainly allows for a reasonable inference that she had reason to believe defendant would admit to the offenses.

¶ 40   Accordingly, we hold that the trial court erred in concluding that the recording did not fall under the eavesdropping statute's fear-of-crime exemption. Thus, the court's suppression of the recording as violative of the eavesdropping statute was error. It necessarily follows that the court's suppression of S.M.'s testimony about the conversation—based on it being fruit of the poisonous tree—was also error. Nevertheless, our conclusion is not dispositive. Nowhere in the

eavesdropping statute does it state that exempted recordings are automatically admissible. As defendant notes, the evidence must still be relevant. We turn now to defendant's relevancy argument.

¶ 41                                         C. Relevancy

¶ 42    We agree with defendant that, even if the recording is exempt from the eavesdropping statute, the recording (and S.M.'s testimony regarding her conversation with defendant) was properly excluded because the evidence obtained by the recording was not relevant to the charged offenses. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Ill. R. Evid. 401 (eff. Jan. 1, 2011). "Evidence which is not relevant is not admissible." Ill. R. Evid. 402 (eff. Jan. 1, 2011). As defendant correctly notes, we may affirm on any basis apparent from the record. See *People v. Barnes*, 2017 IL App (1st) 143902, ¶ 52 n.3 (noting that, although the trial court did not rely on lack of relevancy in precluding the defendant from introducing prior convictions into evidence, the reviewing court may affirm on any basis apparent from the record).

¶ 43    Defendant notes that the critical recorded statements were the following:

"[S.M.:] You literally cracked my jaw. You literally cracked my jaw. How do you live with yourself knowing you beat the mother of your child

[Defendant:] Bitch. And guess what? I've never laid a hand other than you. Every other one can just love me. You suck my dick.

[S.M.:] You said you've only laid your hands on me.

[Defendant:] Only on you in the past. Hell yeah."

¶ 44    In deciding whether the recording fell under the fear-of-crime exemption, the trial court stated that defendant's statements were "very, very, very generalized, and *** not specific enough for th[e] [c]ourt to believe that [they] relate[d] to specifically an incident of charged domestic battery as alleged in [c]ounts [III] and [IV]." Although the court did not speak expressly in terms of relevancy, the court implicitly found the statements irrelevant to the charged offenses.

¶ 45    The State argues that, because defendant's comments followed S.M.'s statement that "[y]ou literally cracked my jaw," defendant was necessarily referring to the charged offenses. We disagree. Given defendant's prior abuse of S.M., defendant's statements could have easily referred to either or both prior convictions. In any event, we cannot say that the court's relevancy determination was an abuse of discretion. See *People v. Clark*, 2018 IL App (2d) 150608, ¶ 26 ("[I]t is within the trial court's discretion whether evidence is relevant and admissible, and its decision will not be reversed absent an abuse of discretion."). Indeed, the court's conclusion was not "arbitrary, fanciful, or unreasonable" and it cannot be said that "no reasonable person would take the court's view." *Id.*

¶ 46    Nevertheless, the State argues that, even if the recording is deemed to be evidence of defendant's other acts of abuse, it was admissible under section 115-7.4(a)-(c) of the Code (725 ILCS 5/115-7.4(a)-(c) (West 2022)), which provides, in relevant part:

> "(a) In a criminal prosecution in which the defendant is accused of an offense of domestic violence as defined in paragraphs (1) and (3) of Section 103 of the Illinois Domestic Violence Act of 1986, ***, evidence of the defendant's commission of another offense or offenses of domestic violence is admissible, and may be considered for its bearing on any matter to which it is relevant.

(b) In weighing the probative value of the evidence against undue prejudice to the defendant, the court may consider:

(1) the proximity in time to the charged or predicate offense;

(2) the degree of factual similarity to the charged or predicate offense; or

(3) other relevant facts and circumstances.

(c) In a criminal case in which the prosecution intends to offer evidence under this Section, it must disclose the evidence, including statements of witnesses or a summary of the substance of any testimony, at a reasonable time in advance of trial, or during trial if the court excuses pretrial notice on good cause shown."

Section 103(3) of the Illinois Domestic Violence Act of 1986 (Act) (750 ILCS 60/103(3) (West 2022)) provides that " '[d]omestic violence' " means "abuse" as defined in section 103(1) of the Act (*id.* § 103(1)). Section 103(1) defines " '[a]buse' " in pertinent part as "physical abuse [or] harassment."

¶ 47 Evidence admitted under section 115-7.4 may be considered for any relevant matter, including the defendant's propensity to commit domestic violence offenses. *People v. Currie*, 2022 IL App (4th) 210598, ¶ 57.

¶ 48 We need not determine whether the evidence met the substantive requirements for admission under section 115-7.4 of the Code. As defendant points out, even if *those* requirements were met, the State failed to "*disclose* the evidence, ***, at a reasonable time in advance of trial[.]" (Emphasis added.) See 725 ILCS 5/115-7.4(c) (West 2022). The State concedes that it did not reference the conversation in its motion *in limine* to admit defendant's prior convictions under 115-7.4. But it argues that since the trial court granted that motion, we should find that the phone call is also relevant and admissible thereunder. However, under section 115-7.4 of the Code, where the

State discloses the evidence *during* trial, the requirement of pretrial notice is excused only upon a showing of "good cause." *Id.* Here, the State makes no argument that it had "good cause" for failing to disclose the evidence "at a reasonable time in advance of trial[.]" *Id.* Thus, the evidence was properly excluded on this basis as well. See *People v. Valdez*, 2022 IL App (1st) 181463, ¶ 84 (where the State failed to include a witness's testimony in its pretrial motions to admit other-crimes evidence, it was error to allow that testimony).

¶ 49                              D. Fruit of the Poisonous Tree

¶ 50    We comment briefly on the trial court's determination, following its suppression of the recording as violative of the eavesdropping statute, that S.M.'s testimony about her conversation with defendant should be suppressed as fruit of the poisonous tree. The parties agree—as do we— that the fruit of the poisonous tree doctrine would not have served as a proper basis to suppress S.M.'s testimony under the facts presented here.

¶ 51    In *Davis*, 2021 IL 126435, ¶ 41, the supreme court held that, although an illegal audio recording of a drug transaction between the defendant and a confidential informant was properly suppressed as violative of the eavesdropping statute, the informant's testimony as to the conversation was not barred as fruit of the poisonous tree, because the informant was a participant in the conversation with the defendant and thus the informant's knowledge of the conversation was not derived from the illegal recording. So too here. Even if the eavesdropping statute barred the recording, S.M.'s testimony about the conversation as a participant was independently admissible and should not have been barred as fruit of the poisonous tree.

¶ 52    In any event, as noted above, S.M.'s testimony was properly suppressed based on relevancy.

¶ 53                                    III. CONCLUSION

¶ 54    For the reasons stated, we affirm the judgment of the circuit court of Lake County.

¶ 55    Affirmed.